Present:    Chief Judge Decker, Judges Humphreys,* Beales, Huff, O'Brien, AtLee, Malveaux,
            Athey, Fulton, Ortiz, Causey, Friedman, Chaney, Raphael, Lorish, Callins and White
Argued at Richmond, Virginia

PUBLISHED

DANA MARK CAMANN, JR.

                                                            OPINION BY
v.      Record No. 0243-22-4                        JUDGE STUART A. RAPHAEL
                                                         JANUARY 16, 2024
COMMONWEALTH OF VIRGINIA


                        UPON A REHEARING EN BANC

            FROM THE CIRCUIT COURT OF FREDERICK COUNTY
                      William W. Eldridge, IV, Judge

        Kelsey Bulger, Senior Appellate Attorney (Catherine French
        Zagurskie, Chief Appellate Counsel; Virginia Indigent Defense
        Commission, on briefs), for appellant.

        Lindsay M. Brooker, Assistant Attorney General (Jason S. Miyares,
        Attorney General; Rebecca M. Garcia, Assistant Attorney General,
        on brief), for appellee.


        Following a jury trial, Dana Mark Camann, Jr., was convicted of three felony counts of

possessing a Schedule I or II controlled substance and one misdemeanor count of possessing a

Schedule IV controlled substance, all in violation of Code § 18.2-250.  Two of the felony

convictions were based on a small amount of white powder, found in Camann's wallet, that

tested positive for fentanyl and etizolam.  At trial, Camann admitted that he knew he possessed

the white powder and the other two drugs found on his person.  But he said he believed that the

white powder was fentanyl, he had never heard of etizolam, and he did not know that another

_____

        * Judge Humphreys participated in the hearing and decision of this case prior to the
effective date of his retirement on December 31, 2023.

drug was present. The prosecution argued to the jury that Camann's knowledge that he possessed fentanyl sufficed to establish the mens rea for the etizolam conviction as well.

On appeal, a divided panel of this Court affirmed in part and reversed in part. *Camann v. Commonwealth*, No. 0243-22-4, 2023 WL 2246635 (Va. Ct. App. Feb. 28, 2023). In part A of the opinion, the majority held that the trial court did not err in denying Camann's suppression motion because the drugs were discovered through a lawful search. In part B, the majority reversed the felony conviction for possessing etizolam, holding that the Commonwealth failed to prove that Camann knew that the white powder in his possession contained more than one controlled substance. The Commonwealth petitioned for rehearing en banc as to part B of the opinion; Camann did not seek rehearing en banc as to part A.

We granted the Commonwealth's petition and stayed the mandate as to all issues decided by the panel pending the decision of this Court sitting en banc. *See* Rule 5A:35(b). We now reverse and vacate the etizolam conviction, dismiss the charge, and remand the case to the trial court for resentencing on the other convictions. As it was not part of our en banc review, the panel's ruling affirming the denial of Camann's suppression motion in part A of the panel opinion "remains undisturbed," Rule 5A:35(b)(1), and we thus "reinstate" it, *Holt v. Commonwealth*, 66 Va. App. 199, 207-08 (2016).

BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires that we "discard" the defendant's evidence when it conflicts with the Commonwealth's evidence, "regard as true all the credible evidence favorable to the Commonwealth," and read "all fair inferences" in the

Commonwealth's favor. *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

Just after 1:00 a.m. one morning in September 2020, Deputies Spears and Russell of the Frederick County Sheriff's Office responded to a report of a man masturbating outside a 7-Eleven convenience store. When Deputy Russell arrived, Camann was standing on a sidewalk in the parking lot, his back against the side of the store. Deputy Russell was first to arrive. Deputy Spears arrived soon after, and his body-camera footage was introduced into evidence. Deputy Russell conversed briefly with Camann before entering the store to interview the customer and employee who had called the sheriff's office. Deputy Spears engaged in "normal small talk" with Camann while Deputy Russell was in the store. Camann denied any wrongdoing and continued to stand in place. Deputy Russell returned, telling Camann that witnesses claimed to have seen him masturbating.

Camann reacted indignantly, but as he shifted his weight back and forth, Deputy Spears noticed that Camann appeared to be hiding something under his left shoe. After Camann moved his foot enough to offer a glimpse of the aluminum foil underneath, Deputy Spears said, "move your foot, move your foot." Camann did so, revealing a blue plastic straw and a piece of aluminum foil with burnt residue. From his training and experience, Deputy Spears knew that people commonly "use aluminum foil and plastic straws" to smoke narcotics.

Upon seeing the burnt residue on the aluminum foil, Spears placed Camann in handcuffs. Deputy Spears read him his *Miranda*[1] rights and subsequently searched his pockets. Spears found more foil and a straw like the one Camann had been hiding under his foot, a cellophane wrapper in Camann's wallet containing a white powder, and pills in a pill bottle. When asked by

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Spears about the white powder, Camann said he didn't know what Spears was talking about and claimed that "someone gave me that wallet."

Subsequent testing revealed that the white powder was a mixture of fentanyl, a Schedule II controlled substance, and etizolam, a Schedule I controlled substance.[2] The mixture weighed 0.056 gram. One tablet in the pill bottle contained amphetamine, a Schedule II controlled substance; fifty tablets contained clonazepam, a Schedule IV controlled substance.[3] The aluminum foil and straw that Camann was hiding under his shoe were not tested for narcotics. The grand jury returned four indictments against Camann: three felony counts of possessing a Schedule I or II controlled substance and one misdemeanor count of possessing a Schedule IV controlled substance.[4] The trial court denied Camann's motion to suppress the evidence.[5]

At the jury trial that followed, the Commonwealth's evidence consisted of Deputy Spears's testimony, his body-camera footage, and a certificate of analysis detailing the results of the lab tests on the drugs found in Camann's possession. The trial court denied Camann's motion to strike the Commonwealth's evidence. Camann then testified. He admitted that he was a drug addict, that he had tried to conceal the foil underfoot, that the foil contained "a drug," and that the items found in his pockets were all his. He admitted knowing that the white powder was

---

[2] *See* Code §§ 54.1-3446 (Schedule I), 54.1-3448 (Schedule II). Etizolam was added as a Schedule I drug in 2016. *See* 2016 Va. Acts chs. 103, 112.

[3] *See* Code § 54.1-3452 (Schedule IV).

[4] Although the pill bottle contained fifty tablets of clonazepam, only one count of possession was charged. *See generally Lane v. Commonwealth*, 51 Va. App. 565, 576-82 (2008) (holding that the Double Jeopardy Clause limited Lane's prosecution to one count of possession of oxycodone with intent to distribute, despite that he was found in possession of three different forms of that drug, including 90 tablets, where the Commonwealth could not show that the defendant "had different intents with regards to the different forms of oxycodone, for instance, that one was for personal use or was intended specifically for a particular buyer").

[5] Judge Alexander Iden presided at the suppression hearing.

fentanyl but denied knowing that it also contained etizolam, a drug he said he had never heard of.[6]

The trial court denied Camann's renewed motion to strike the etizolam charge. Relying on *Sierra v. Commonwealth*, 59 Va. App. 770 (2012), the court held that Camann "b[ore] the risk under *Sierra* of punishment for whatever substance was there." Consistent with that ruling, the prosecutor told the jury during closing argument, "I don't know whether he knew [the etizolam] was there," but "[i]t doesn't matter . . . . If he . . . thinks it is just fentanyl but it turns out to be two drugs in there, he is guilty of possessing both of them . . . . He is guilty of any drug that is in that mix."

The jury convicted Camann on all four charges. Although the original indictments did not identify the specific drug involved, the verdict form signed by the jury foreperson correlated the drugs to the indictments: CR21-213 (amphetamine); CR21-214 (fentanyl); CR21-215 (etizolam); and CR21-216 (clonazepam).

The trial court entered judgment on the jury verdict and ordered a presentence investigation and report. The court sentenced Camann to two years' incarceration with one year suspended for felony possession of amphetamine; two years with two years suspended on each of the felony convictions for possessing fentanyl and etizolam; and 180 days with 180 days suspended on the misdemeanor conviction for possessing clonazepam.[7]

---

[6] Camann was not the only one unfamiliar with etizolam. The prosecutor, the sheriff's deputy, the defense lawyer, and the trial judge all said at different points during the trial that they could not pronounce the name of the drug. The prosecutor called it "the E-drug" for short.

[7] Although the record does not contain a transcript of the sentencing hearing, the final disposition worksheet signed by the trial judge reflects that the sentence did not depart from the range recommended by the discretionary sentencing guidelines. Because the etizolam conviction constituted a third count of felony possession of a Schedule I or II controlled substance, it increased the upper limit of the sentencing range under the discretionary sentencing guidelines. *See* Code § 19.2-298.01.

Camann noted a timely appeal.

ANALYSIS

The question presented is whether a defendant who possesses a mixture of two controlled substances can be convicted of two violations of Code § 18.2-250 if the Commonwealth proves the defendant's knowing possession of only one controlled substance. The Commonwealth argues that proof that the defendant has knowingly possessed one controlled substance in a mixture permits the defendant to be convicted of as many violations of Code § 18.2-250 as there are drugs in the mixture.

We disagree. The Commonwealth's position is supported by neither the text of the statute nor the precedent construing it. We also reject the Commonwealth's fallback argument that the evidence at trial sufficed to prove that Camann knew that the mixture he possessed contained more than one controlled substance.

A. *Every conviction under Code § 18.2-250 requires knowing possession of a controlled substance.*

"Questions of statutory interpretation . . . are subject to *de novo* review on appeal, and we owe no deference to the circuit court's interpretation of the statutory scheme." *Esposito v. Va. State Police*, 74 Va. App. 130, 133 (2022). "When construing a statute, our primary objective 'is to ascertain and give effect to legislative intent,' as expressed by the language used in the statute." *Va. Elec. & Power Co. v. State Corp. Comm'n*, 295 Va. 256, 262-63 (2018) (quoting *Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 425 (2012)). "We must determine the legislative intent by what the statute says and not by what we think it should have said." *Miller & Rhoads Bldg., L.L.C. v. City of Richmond*, 292 Va. 537, 541-42 (2016) (quoting *Carter v. Nelms*, 204 Va. 338, 346 (1963)).

To be guilty of possession in violation of Code § 18.2-250, the violation must be knowing and intentional. The statute provides: "It is unlawful for any person *knowingly or*

*intentionally* to possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription . . . ." Code § 18.2-250(A) (emphasis added). The requirement of knowing possession dates to *Ritter v. Commonwealth*, 210 Va. 732 (1970). *Ritter* construed the predecessor statute, the Uniform Narcotic Drug Act, which had been "universally adopted by the states." *Id*. at 742. Even though the text of the predecessor statute contained no explicit state-of-mind requirement,[8] *Ritter* held that it was "generally . . . necessary to show that defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it." *Id*. at 741. The General Assembly codified the state-of-mind requirement ("knowingly or intentionally to possess") when it enacted the Drug Control Act to replace the Uniform Narcotic Drug Act. *See* Drug Control Act, 1970 Va. Acts ch. 650, § 1 (Code § 54-524.101(c)).

Our Supreme Court reemphasized the mens-rea requirement for drug possession in *Young v. Commonwealth*, 275 Va. 587 (2008), when it overruled our decision in *Josephs v. Commonwealth*, 10 Va. App. 87 (1990) (en banc). We had held in *Josephs* that "[p]ossession of a controlled drug gives rise to an inference of the defendant's knowledge of its character." *Id.* at 101. *Young* said that was incorrect. 275 Va. at 592. *Young* made clear that "[a]ctual or constructive possession alone is not sufficient. 'The Commonwealth must also establish that the defendant intentionally and consciously possessed it *with knowledge of its nature and character*.'" *Id.* at 591 (citation omitted) (quoting *Burton v. Commonwealth*, 215 Va. 711, 713 (1975)).

---

[8] *See* Uniform Narcotic Drug Act, 1934 Va. Acts ch. 86, § 2 ("It shall be unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense, or compound any narcotic drug, except as authorized in this act.") (codified as amended as Code § 54-488 (1950)).

In 2012, we held in *Sierra* "that the plain language of Code § 18.2-250 requires a defendant to know that the substance he possesses is in fact a controlled substance, but . . . not . . . precisely what controlled substance it is." 59 Va. App. at 775. *Sierra* noted that the Supreme Court's requirement in *Young* that the defendant know the "nature and character" of the substance he possesses did not answer "whether a defendant must know precisely what substance he is possessing, or whether he must simply know the substance's nature and character as a controlled substance." *Id.* at 782 (quoting *Young*, 275 Va. at 591). *Sierra* held that the second understanding was correct. *Id.* at 782-84.

Thus, if a person thinks he has heroin, but it turns out to be fentanyl, that person has still "knowingly or intentionally . . . possess[ed] a controlled substance." Code § 18.2-250. "A defendant who intentionally possesses a controlled substance, aware of its nature and character as such, bears the risk of incurring whatever punishment the General Assembly has prescribed for the possession of the specific substance he has." *Sierra*, 59 Va. App. at 779. In other words, "[a] claim by a defendant that he knew he was possessing a controlled substance, but was unaware or mistaken as to the precise identity of that substance, is not a defense under Code § 18.2-250." *Id.* at 783-84.

Applying those principles here makes clear that each conviction for drug possession under Code § 18.2-250 requires the Commonwealth to prove that the defendant possessed the substance with knowledge of its nature and character as a controlled substance. In other words, "knowledge is an *essential* element of the crime." *Young*, 275 Va. at 591 (emphasis added).

We are not persuaded by the Commonwealth's argument that subparts (a) through (c) of Code § 18.2-250(A), together with our decision in *Sierra*, show that a defendant can be held criminally responsible for *every* drug in the mixture as long as he knew that *one* drug was present. Subparts (a) through (c) specify the offense level for possessing a controlled substance

according to whether the controlled substance is listed on Schedules I, II, III, IV, V or VI of the Drug Control Act. As relevant to Camann's convictions, possession of a Schedule I or II drug is punishable as a "Class 5 felony," Code § 18.2-250(A)(a), while possession of a Schedule IV drug is "punishable as a Class 2 misdemeanor," Code § 18.2-250(A)(b1).

The Commonwealth argues that subparts (a) through (c) contain no express state-of-mind requirement. To its thinking, once the prosecution proves under subsection (A) that the defendant knowingly possessed "*a* controlled substance," Code § 18.2-250(A) (emphasis added), the mens-rea requirement is satisfied for however many controlled substances are found in the mixture.

But that construction cannot be squared with the plain text of the statute. Subparts (a) through (c) are just that—subparts of subsection (A). They do not create standalone crimes that exist independently of that subsection. Thus, the fact that the subparts themselves do not mention a state-of-mind requirement does not transform possession of a drug shown on Schedules I through VI into a strict-liability offense. To the contrary, when specifying the offense level according to which drug is possessed, each subpart incorporates the mens rea for violating subsection (A) ("knowingly and intentionally") by referencing the punishment for violating "this section."[9] That violation-of-this-section language makes clear that the defendant's violation must still be a knowing violation, since knowledge is a crucial element of the offense under subsection (A).

---

[9] *See* Code § 18.2-250(A)(a) ("Any person who violates *this section* with respect to any controlled substance classified in Schedule I or II . . . ."), -250(A)(b) ("who violates *this section* with respect to . . . Schedule III . . . ."), -250(A)(b1) ("Violation *of this section* with respect to . . . Schedule IV . . . ."), -250(A)(b2) ("Violation *of this section* with respect to . . . Schedule V . . . ."), -250(A)(c) ("Violation *of this section* with respect to . . . Schedule VI . . . .") (emphases added).

The Commonwealth's contrary reading also violates *Young*'s admonition that "knowledge is an essential element of the crime." 275 Va. at 591. The Commonwealth would permit the defendant's knowing possession of one controlled substance to satisfy the state-of-mind requirement for multiple other offenses, even if the defendant thought he had only one drug. The Commonwealth took the position at oral argument that if a defendant buys white powder thinking it is heroin, but it turns out to contain 17 controlled substances, the defendant has committed 17 crimes. The Commonwealth refused to concede that its interpretation imposes strict liability for the extra convictions beyond the first. But it obviously does. The defendant in that situation would have knowingly possessed only 1 controlled substance, not 17.

The Commonwealth acknowledged that "it may be unpalatable . . . that someone could be convicted of [possessing] multiple substances for something that's contained in one visually indistinguishable substance," but the Commonwealth insists that this result is compelled by *Sierra*. We read *Sierra* differently.

As noted above, *Sierra* rejected the argument that the defendant must know precisely which controlled substance was found in his possession. The defendant there argued against that reading, relying on subparts (a) through (c) of Code § 18.2-250(A). Since the offense level specified in those subparts depended on which controlled substance was involved, he insisted that the prosecution must prove that he knew *which* controlled substance he possessed. We disagreed, explaining that "[n]owhere . . . in subparts (a)-(c) did the General Assembly insert a *mens rea* requirement. Rather, the General Assembly chose to specify a requisite degree of *mens rea* only in the general proscription against possessing controlled substances in the first paragraph of subsection (A)." *Sierra*, 59 Va. App. at 777-78.

The Commonwealth misreads that passage to eliminate the state-of-mind requirement altogether for additional convictions for multiple drugs in a mixture as long as the defendant

knowingly possesses *one* controlled substance.  Yet that same passage repeats three sentences later that the state-of-mind requirement in subsection (A) must be satisfied to obtain a conviction under the statute: "The specific type of substance found in a defendant's possession is an *actus reus* element the Commonwealth must prove pursuant to subparts (a)-(c) of Code § 18.2-250(A), but it is not an element *to which the mens rea requirement found earlier in Code § 18.2-250(A) applies*."  *Id*. at 778 (emphasis added).

Our holding here that every conviction under Code § 18.2-250 requires *knowing* possession is in perfect harmony with *Sierra*.  A person who knows that the pill or powder he possesses contains *a* controlled substance is criminally liable for possession under *Sierra*, even if he thinks he possesses a particular controlled substance that turns out to be different.  Likewise, when the Commonwealth seeks two convictions for possessing a mixture containing more than one controlled substance, the Commonwealth must prove that the defendant knew there were at least two controlled substances in the mixture.  *Sierra* simply spares the Commonwealth from having to prove that the defendant knew *which* controlled substances were present.

We do not accept the dissent's suggestion that we should relax the mens-rea requirement for possessing multiple controlled substances in a mixture to make it easier for the Commonwealth to obtain more than one conviction for possessing the mixture.  The dissent worries that, "[p]ractically speaking," it could be difficult for "Commonwealth's attorneys in the vast majority of cases [to] prove a defendant knew *how many* controlled substances he possessed without also proving the defendant knew *which* controlled substances he possessed."  *Post* at 22 n.17.  The dissent adds that "it would seem to be difficult, if not impossible, to find that a defendant had knowledge of the presence of each drug in a mixture."  *Id.* at 23.

The dissent appears to overstate the difficulty, however.  As the dissent acknowledges, many drug mixtures are known by their slang street names.  A *speedball* is a "mixture of cocaine

- 11 -

and heroin." *United States v. Paulino*, 13 F.3d 20, 22 (1st Cir. 1994). *Apache*, *Blonde*, and *Takeover* all refer to a mixture of fentanyl and cocaine.[10] Thus, the Commonwealth could seek to prove knowing possession of two controlled substances in a mixture by showing that the defendant knew and used the street name of the mixture found in his possession. Camann's counsel at oral argument suggested other forms of proof.[11]

In any case, whatever practical inconveniences may arise when the Commonwealth seeks multiple convictions for possessing a single mixture, we cannot dispense with the fundamental requirement for *each* conviction that "knowledge is an *essential* element of the crime." *Young*, 275 Va. at 591 (emphasis added). The dissent, by contrast, does not directly confront the problem that its interpretation would create strict criminal liability for possessing each additional substance in the mixture beyond the first one. The dissent only obliquely acknowledges that problem, admitting that its interpretation could lead to "potentially harsh outcomes." *Post* at 25.[12]

Although the dissent suggests that our decision is driven by "policy implications, not legal interpretation," *id.* at 26, the opposite is true. The dissent says that eliminating the mens-rea requirement for additional convictions for possessing a single substance is supported by "the

---

[10] *See generally* Drug Enforcement Agency, *Slang Terms and Code Words: A Reference for Law Enforcement Personnel* (July 2018), https://www.dea.gov/sites/default/files/2018-07/DIR-022-18.pdf.

[11] Camann's counsel suggested that the Commonwealth might offer expert testimony that two drugs are commonly sold together, or that the defendant had been previously convicted of possessing the drugs found in the mixture.

[12] The dissent relies heavily on the unpublished panel opinion in *Howard v. Commonwealth*, No. 0780-17-1, 2018 WL 2604993 (Va. Ct. App. June 5, 2018). Unpublished opinions may be cited "as informative, but will not be received as binding authority." Rule 5A:1(f). To the extent that *Howard* would permit strict liability for additional possession convictions when the Commonwealth proves knowing possession of only a single controlled substance, we disavow it.

General Assembly's legislative intent to fight the illicit flow of drugs (including where drug dealers mix more than one controlled substance in a capsule or powder)." *Id.* at 25.  But the legislature speaks only through its enactments.  And the dissent's position would ignore the mens-rea requirement in Code § 18.2-250(A), in violation of the statute.  Its interpretation would also contravene our Supreme Court's long tradition of insisting that knowledge is an essential element of the crime of possession.

    *B.  The Commonwealth failed to prove mens rea for the etizolam conviction.*

    Camann argues that the trial court should have granted his motion to strike at the close of the evidence because the Commonwealth failed to prove that he knowingly and intentionally possessed etizolam.  When, as here, a defendant introduces evidence on his "'own behalf after the denial of a motion to strike the Commonwealth's evidence, any further challenge to the sufficiency of the evidence at trial or on appeal is to be determined from the entire record[,]' including the defendant's own testimony." *Carosi v. Commonwealth*, 280 Va. 545, 554 (2010) (quoting *Murillo-Rodriguez v. Commonwealth*, 279 Va. 64, 74 (2010)).

    The prosecution presented no evidence to show that Camann knew that the white powder in his wallet contained more than one controlled substance.  The Commonwealth emphasizes that Camann admitted at trial to being a drug user, admitted to possessing the amphetamines and clonazepam, and admitted that the white powder in his wallet was fentanyl.  But that evidence is plainly insufficient to prove Camann's knowledge that the white powder also contained a second controlled substance.  To infer that Camann must have known that he possessed a second substance would be no different from the misguided inference in *Josephs* that mere possession of a controlled substance "gives rise to an inference of the defendant's knowledge of its character." 10 Va. App. at 101.  Or like the inference we rejected in *Yerling v. Commonwealth*, 71 Va. App. 527 (2020), that a defendant's knowledge that marijuana was present suggested that he must

have known that an oxycodone pill in a "balled-up piece of notebook paper" was present as well. *Id.* at 535. *Young* teaches that such inferences are improper. Instead, actual knowledge must be proven. 275 Va. at 591.

What is more, under the Commonwealth's theory of the case, the jury could have found Camann guilty even if it believed him when he testified that he did not know what etizolam was, let alone that it was mixed in with the fentanyl. The prosecutor argued to the jury—consistent with the trial court's ruling denying Camann's motion to strike—that Camann was criminally responsible for the etizolam even if he did not know it was there. The jury was thus free to wrongly convict Camann of knowingly possessing a drug when he had no such knowledge.

Finally, the Commonwealth argues that "the jury was 'entitled to disbelieve [Camann's] self-serving testimony' and 'to conclude that the accused is lying to conceal his guilt.'" Commonwealth Br. 23 (quoting *Speller v. Commonwealth*, 69 Va. App. 378, 388 (2018)). To be sure, our Supreme Court has said that, after disbelieving a defendant's testimony, the trier of fact could consider such "perjured testimony as affirmative evidence of guilt." *Morris v. Commonwealth*, 269 Va. 127, 134 (2005) (quoting *Wright v. West*, 505 U.S. 277, 296 (1992) (Thomas, J.) (plurality opinion)).

But in both *Morris* and *Wright*—the plurality opinion on which *Morris* relied—the government adduced ample evidence of the defendant's guilt. *See Wright*, 505 U.S. at 295 (plurality) ("more than enough evidence to support West's conviction"); *Morris*, 269 Va. at 133-34 (citing various evidence showing the defendant's knowledge that the flare gun he possessed was a firearm). Similarly, in our cases employing the affirmative-evidence-of-guilt language

- 14 -

since *Morris*, the Commonwealth introduced sufficient evidence to prove the defendant's guilt.[13]

It was in that context that we said the trier of fact could also consider the defendant's lies as

affirmative evidence of guilt.[14]

By contrast, our appellate courts have not held that the Commonwealth could carry its

burden of proving an essential element of the crime based *solely* on the negative inference that

the factfinder could disbelieve the defendant who professes his innocence at trial. Our Supreme

Court rejected that notion more than 50 years ago:

> The giving by the accused of an unclear or unreasonable or false
> explanation of his conduct or account of his doings are matters for
> the jury to consider, but they do not shift from the Commonwealth
> the ultimate burden of proving by the facts or the circumstances, or
> both, that beyond all reasonable doubt the defendant committed the
> crime charged against him.

---

[13] *See Clark v. Commonwealth*, 78 Va. App. 726, 752 (2023) ("overwhelming evidence"); *Armstead v. Commonwealth*, 56 Va. App. 569, 81 (2010) (drugs found "in plain view" and defendant "shouted that everything in the vehicle belonged to him"); *Sierra*, 59 Va. App. at 784 (defendant's guilty knowledge supported by officer's testimony "that he concluded the pills were prescription pills based on the shapes of the pills and the numbers on them"); *Ervin v. Commonwealth*, 57 Va. App. 495, 507-10 (2011) (en banc) (defendant's knowing possession of marijuana supported by strong marijuana smell emanating from his car and exclusive access to the vehicle); *Coleman v. Commonwealth*, 52 Va. App. 19, 25 (2008) ("facts amply support the trial court's conclusion that Coleman's . . . eluding was an endangerment both to himself and anyone else on the road"); *Haskins v. Commonwealth*, 44 Va. App. 1, 10 (2004) (finding that defendant's knowing possession of the bag of cocaine he was sitting on supported by "the 'very large' knot in the bag (giving rise to the inference that Haskins would have felt it) and the fact that the bag was in plain view on a well-lit porch (supporting the inference that Haskins, assuming he did not hide the bag there himself, would have seen it before sitting down on it)").

[14] *E.g.*, *Clark*, 78 Va. App. at 752-53 ("A rational fact finder could reject Clark's hypothesis of innocence based on the overwhelming evidence establishing the timing of the offenses, Clark's opportunity to commit the crimes, the DNA and other physical evidence at the crime scene, and his statements and conduct demonstrating his consciousness of guilt. . . . Considering that evidence, the jury reasonably could conclude that Clark's sexual contact with S.F. was not consensual and his contrary claims were 'little more than l[ies] to "conceal his guilt,"' which the jury 'could treat . . . as "affirmative evidence of guilt."'" (second and third alterations in original) (quoting *Coleman*, 52 Va. App. at 25)).

- 15 -

*Foster v. Commonwealth*, 209 Va. 326, 330-31 (1968) (quoting *Smith v. Commonwealth*, 192 Va. 453, 461 (1951)).[15]

The contrary approach would mean that "in cases in which defendants testify, the evidence invariably would be sufficient to sustain the conviction." *United States v. Zeigler*, 994 F.2d 845, 849 (D.C. Cir. 1993). We reject that approach as untenable and inconsistent with existing case law. In short, "[a]lthough it was within the province of the jury to assess the credibility of appellant's testimony, the mere conclusion that appellant had lied to conceal his guilt was insufficient to provide a basis for inferring that he had the requisite knowledge." *Tucker v. Commonwealth*, 18 Va. App. 141, 144 (1994).

CONCLUSION

We reverse Camann's conviction for possession of etizolam and dismiss the indictment for that charge (CR21-215). Because the etizolam conviction affected the sentencing guidelines for the other convictions (CR21-213, -214, -216), *see* note 7 *supra*, we remand this case to the trial court for resentencing on those convictions consistent with this opinion.

*Reversed and remanded.*

---

[15] Our appellate courts have reaffirmed that principle repeatedly since then. *See Tarpley v. Commonwealth*, 261 Va. 251, 256-57 (2001); *Burrows v. Commonwealth*, 224 Va. 317, 319 (1982); *Tucker v. Commonwealth*, 18 Va. App. 141, 144 (1994).

Athey, J., with whom Beales, J., joins, dissenting.

Since I disagree with the majority that, to satisfy the mens rea requirement for two separate convictions under Code § 18.2-250, "the Commonwealth must prove that the defendant knew there were at least two controlled substances in the mixture," I therefore respectfully dissent from the majority's decision to reverse Camann's conviction for possessing etizolam. Instead, I would have affirmed Camann's conviction for possession of etizolam since the Commonwealth sufficiently established the requisite mens rea in support of both convictions under Code § 18.2-250 by proving that Camann "knowingly or intentionally . . . possess[ed] a controlled substance."

Restating the pertinent facts, law enforcement initially recovered an aluminum foil smoking device and plastic straw with burnt residue under Camann's shoe. A deputy sheriff then searched his pockets and discovered a second aluminum foil and straw smoking device, a pill bottle containing almost a hundred pills, as well as a cellophane wrapper containing white powder from his wallet. With the exception of the smoking device found under his shoe, the recovered contraband was forwarded to the Department of Forensic Science ("DFS") for testing to determine whether, and to what extent, controlled substances were present in the recovered contraband. Based on the test results, the Commonwealth sought, and the grand jury issued, four separate indictments based upon the four different controlled drugs found within the pill bottle and cellophane wrapper.

At trial, an expert from DFS certified that present within the pill bottle were clonazepam and amphetamine, both of which are controlled drugs, and further that the white powder within the cellophane wrapper contained two additional controlled drugs: fentanyl and etizolam.[16] The

---

[16] In clinical studies, "etizolam is approximately 10 times as potent as diazepam in producing hypnotic effects." Drug Enforcement Administration, *Etizolam* (Aug. 2023), https://www.deadiversion.usdoj.gov/drug_chem_info/etizolam.pdf.

appellant subsequently admitted to possessing clonazepam, amphetamine, and fentanyl but denied knowingly possessing etizolam. In denying Camann's renewed motion to strike the evidence concerning the etizolam conviction, the trial court concluded that "[Camann] testified that he knew or believed . . . that it was fentanyl," but "he got a substance that was apparently cut" with the etizolam; thus "he bears the risk under *Sierra* of punishment for whatever substance was there." Following their deliberations, the jury found Camann guilty of possessing both the amphetamine and clonazepam in the pill bottle as well as the two other controlled substances found in the cellophane wrapper: fentanyl and etizolam. The verdict form executed by the foreperson for each separate conviction noted the specific controlled drug that Camann possessed, including the guilty verdict for possession of etizolam.

The majority asserts that the question presented by this appeal is "whether a defendant who possesses a mixture of two controlled substances can be convicted of two violations of Code § 18.2-250 if the Commonwealth proves the defendant's knowing possession of only one controlled substance." Rather than showing some deference to the factfinder who, based upon the separate verdict forms, determined that the evidence was sufficient to convict Camann for possession of two different controlled substances within the cellophane wrapper, the majority concludes that "knowing possession" of etizolam was not proven since the requisite mens rea was met only with regard to one of the two controlled drugs (fentanyl) found within the cellophane wrapper.

Thus, as a threshold matter, I disagree with the majority's framing of the question presented on appeal from the trial court. Based on the error Camann assigned to the trial court, the question to be resolved on appeal is whether "any rational trier of fact could . . . have found beyond a reasonable doubt that [Camann] knowingly and intentionally possessed Etizolam." Since, the appeal before us simply challenges the sufficiency of the evidence in support of a

single conviction for possession of etizolam, resolving this appeal requires the majority to employ the highest level of deference to the conclusion reached by the trier of fact, namely whether the trial court was plainly wrong and without any credible evidence to support its decision that Camann knowingly possessed a controlled substance identified in the verdict form as etizolam—and therefore that no rational factfinder could have found him guilty of possessing the etizolam. Instead, the majority advocates that the assigned error somehow compels de novo reinterpretation of Code § 18.2-250. Since, "on appeal, 'we presume the judgment of the trial court to be correct' and reverse only if the trial court's decision is 'plainly wrong or without evidence to support it,'" *Stevens v. Commonwealth*, 46 Va. App. 234, 248 (2005) (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 257 (2003) (en banc)), unless the majority found that no rational factfinder could have reached the conclusion in this case, "the jury's verdict cannot be overturned on appeal," *id.*

Here, there is ample evidence in the record concerning the nature of the drugs found on Camann's person including both the pills in the pill bottle and the powdery substance within the cellophane wrapper. In addition, the jury heard evidence that the cellophane wrapper contained a white powder that tested positive for two controlled drugs, including etizolam. Also, during trial, Camann answered "yes" when asked on direct examination whether "the white powdery substance" found in his wallet was his. Further, when asked whether he knew what etizolam was, he merely stated that he "[had] never heard of that." Hence, in the required light most favorable to the Commonwealth, the jury simply failed to believe the self-serving testimony of Camann that he did not know he possessed one of the four controlled substances found in his possession. Thus, the jury was entitled to infer from his admission to knowingly possessing the white powder which contained a controlled substance, that he was "aware of [its] presence and character." Finally, since Camann also readily admitted to being a drug addict, the jury could

- 19 -

have easily inferred that as a drug addict, he had knowledge of the potential for the fentanyl he admitted to knowingly possessing being "cut" with other drugs, as it was here. Hence, given the error assigned by Camann, the credible evidence in the record, and the standard of review we are compelled to apply, I would have found the evidence sufficient to support Camann's conviction for possession of etizolam.

Since the majority reaches its decision by reinterpreting Code § 18.2-250 utilizing a de novo standard of review, I am also compelled to respond to the invited issue in this case as it is framed by the majority. Hence, we begin by focusing on the language used in Code § 18.2-250, and where such language used is "plain and unambiguous, we are bound by the plain meaning of that statutory language." *Coles v. Commonwealth*, 44 Va. App. 549, 557 (2004) (quoting *Beck v. Shelton*, 267 Va. 482, 488 (2004)). "Where bound by the plain meaning of the language used, we are not permitted 'to add or to subtract from the words used in the statute.'" *Id.* (quoting *Posey v. Commonwealth*, 123 Va. 551, 553 (1918)).

The mens rea requirements of Code § 18.2-250 requires that possession of a controlled substance be knowing or intentional. *Sierra v. Commonwealth*, 59 Va. App. 770, 777 (2012). However, this standard "does not require him to know precisely what controlled substance it is" that he possesses. *Id.* at 775. Therefore, although "[k]nowledge is an essential element of the crime," *Young v. Commonwealth*, 275 Va. 587, 591 (2008), the Commonwealth is not required to show that a defendant had knowledge of the precise identity of each of the controlled substances he intentionally possessed. The heightened evidentiary standard advanced by the majority would contradict our prior clear ruling in *Sierra* that being "unaware or mistaken as to the precise identity of [the] substance[] is not a defense." *Sierra*, 59 Va. App. at 783.

As we have previously stated, the mens rea requirement in Code § 18.2-250 only applies to subsection (A). *Id.* at 778 ("[T]he General Assembly chose to specify a requisite degree of

- 20 -

*mens rea* only in the general proscription against possessing controlled substances in the first paragraph of subsection (A).").  "Nowhere, however, in subparts (a)-(c) did the General Assembly insert a *mens rea* requirement."  *Id.* at 777-78.  Instead, subparts (a)-(c) focus on the defendant's actus reus and the specific type (or in this case, types) of different controlled substance(s) found in the defendant's possession.  *Id.* at 778 ("The specific type of substance found in a defendant's possession is an *actus reus* element the Commonwealth must prove pursuant to subparts (a)-(c) of Code § 18.2-250(A), but it is not an element to which the *mens rea* requirement found earlier in Code § 18.2-250(A) applies.").

"[T]he General Assembly has chosen not to excuse a defendant who knows he is possessing a controlled substance, but is unaware or perhaps mistaken as to the precise identity of the specific substance he is possessing . . . . "  *Id.* at 779.  The legislature has decided that if a defendant knows that a substance he possesses is controlled, he bears the risk of incurring whatever punishment is prescribed for possessing that specific substance without a prescription, "and we will not substitute our own policy for that of the legislature."  *Id.*

Accordingly, I take issue with the majority requiring the Commonwealth to prove Camann knew the precise number of controlled drugs in the white powdery mixture of controlled substances that he acknowledged intentionally possessing.  Here, the Commonwealth filed separate indictments alleging possession of both controlled drugs in the mixture and the jury, as evidenced by the verdict forms, found the defendant guilty of possessing both drugs.[17]  "[T]he

---

[17] Although the majority argues it is only requiring Camann to know *how many* controlled substances he possessed, not *which* controlled substances he possessed, this seems to be a distinction without a difference.  Practically speaking, we remain skeptical that Commonwealth's attorneys in the vast majority of cases could prove a defendant knew *how many* controlled substances he possessed without also proving the defendant knew *which* controlled substances he possessed.  In subsection (A) of Code § 18.2-250, the General Assembly chose to only require sufficient mens rea for proving knowing or intentional possession of "a" controlled substance not "one or more" controlled substances, as seemingly

- 21 -

plain language of Code § 18.2-250 indicates the legislature's intent to criminalize the knowing and intentional possession of 'a controlled substance,' whatever that controlled substance may turn out to be." *Id.* at 778. Here, Camann possessed two separate controlled substances mixed together: fentanyl and etizolam. He acknowledged that the white powder containing these controlled drugs was his and that he was both aware of and intended to possess the white powder. While Camann did need to have the knowledge or the intent to possess a controlled substance to be convicted, he "[did] not need to know the *exact* nature of the substance in his possession, only that it was a controlled substance of some kind." *Id.* at 781 (emphasis added) (quoting *United States v. Martin*, 274 F.3d 1208, 1210 (8th Cir. 2001)).

The majority acknowledges that under *Sierra*, if a person thinks he has heroin, but it turns out to be fentanyl, that person has still "knowingly or intentionally . . . possess[ed] a controlled substance." Code § 18.2-250; *Sierra*, 59 Va. App. at 783-84. However, the majority seemingly concludes that *Sierra* should apply with less force when a defendant thinks he possesses heroin, but instead possesses both heroin and fentanyl mixed together. Likewise, as the majority notes, unless the mixture of controlled drugs goes by a common street name it would seem to be difficult, if not impossible, to find that a defendant had knowledge of the presence of each drug

_____

advocated by the majority requiring an additional showing as to *how many* substances are in a defendant's possession. *See Howard v. Commonwealth*, No. 0780-17-1, slip op. at 5-6, 2018 WL 2604993, at *3 (Va. Ct. App. June 5, 2018) ("The General Assembly selected 'a' controlled substance and 'any' controlled substance as the statute's unit of prosecution. By doing so, the legislature selected a term that would permit a defendant to be charged for each controlled substance he possesses."). Thus, while we agree with the majority that there is a mens rea requirement, we do not agree with extending the mens rea requirement to subparts (a)-(c). The majority mischaracterizes this interpretation as a "relax[ation] [of] the mens rea requirement," even though this interpretation is the only one that gives meaning to the structure chosen by the General Assembly in separating the mens rea provision from the actus reus element within subparts (a)-(c). *See* Code § 18.2-250(A).

in a mixture.[18]  To this end, we have previously noted that "[t]o interpret the statute as appellant urges would be to encourage drug dealers to mix various narcotics into one container in order to thwart prosecution under Code § 18.2-250 for more than one felony charge of possession of multiple narcotics in the same capsule, pill, or other container."  *Howard v. Commonwealth*, No. 0780-17-1, slip op. at 9, 2018 WL 2604993, at *5 (Va. Ct. App. June 5, 2018).

In *Howard*, the defendant was arrested with "a suspected capsule of heroin."  *Id.* at 2, 2018 WL 2604993, at *1.  Upon examination, it was discovered that the capsule actually contained a mixture of heroin and fentanyl.  *Id.*  On appeal, Howard disputed "whether the mens rea requirement of Code § 18.2-250 requires a defendant to know the exact number of controlled substances that are in his possession," as well as "whether the evidence in this case was sufficient to support multiple convictions under that statute."  *Id.* at 4, 2018 WL 2604993, at *2.  In assessing defendant Howard's argument, a panel of this Court noted that "[t]he General Assembly selected 'a' controlled substance and 'any' controlled substance" as the relevant unit of prosecution, and thus "the legislature selected a term that would permit a defendant to be charged for each controlled substance he possesses."  *Id.* at 5-6, 2018 WL 2604993, at *3.  This was a legislative choice by the General Assembly "not to limit the number of charges or convictions that a defendant could receive if multiple controlled substances were packaged in a single container or a single capsule."  *Id.* at 6, 2018 WL 2604993, at *3.  In short, as illustrated

---

[18] The majority notes that along with Camann, "[t]he prosecutor, the sheriff's deputy, the defense lawyer, and the trial judge" "could not pronounce [etizolam]."  While perhaps unknown to the trial court at the time of Camann's conviction, etizolam has been known to be used in combination with opioids: etizolam has "increasing[ly]" been reported "as an ingredient in counterfeit medications."  Suzanne Nielsen & Andrew McAuley, *Etizolam: A rapid review on pharmacology, non-medical use and harms, Australasian Professional Society on Alcohol and other Drugs* (Apr. 3, 2020), https://doi.org/10.1111/dar.13052.  Additionally, "most harms with etizolam appear to be related to the wide availability of illicitly manufactured pills, which are taken in unknown doses and combined with other substances."  *Id.*  Further, the General Assembly went to the effort to designate etizolam in the list of Schedule I controlled substances under Code § 54.1-3446(4).

by this Court's 2018 panel decision in *Howard*, the fact that "two controlled substances were packaged in a single capsule" cannot limit the Commonwealth from "convict[ing] and punish[ing] separately for the possession of each controlled substance within that capsule." *Id.*

Here, Camann was indicted for possessing four separate controlled substances. He admitted to possessing three but denied possessing the fourth. The trial court instructed the jury that their verdict forms indicated each of the four controlled substances allegedly possessed, including etizolam. The jury then convicted Camann on each indictment for "knowingly or intentionally possess[ing] a . . . controlled substance." Like the defendant in *Sierra*, it was a matter for the jury to consider whether Camann "knowingly or intentionally possessed" the substances in his possession. The jury was instructed on the meaning of this mens rea requirement: "that a person is aware of the presence and character of the substance and has actual physical possession or constructive possession." In convicting Camann on all four possession charges, the jury found that Camann knew he possessed four separate controlled substances even though he claimed to be mistaken as to the identity of the etizolam. Thus, consistent with *Sierra*, Camann's mistake as to the specific controlled substances within the cellophane wrapper cannot be a defense under the plain meaning of Code § 18.2-250. *Sierra*, 59 Va. App. at 783-84 ("A claim by a defendant that he knew he was possessing a controlled substance, but was unaware or mistaken as to the precise identity of that substance, is not a defense under Code § 18.2-250.").

As stated, *Sierra* is helpful in fleshing out the concept that possession of the substance "is an actus reus element" and not a mens rea element." *Howard*, slip op. at 8, 2018 WL 2604993, at *4 (quoting *Sierra*, 59 Va. App. at 778). Because Camann possessed the controlled substances within the white powder as proved by the testing performed by the Department of Forensic Science, he thus satisfied the actus reus element. However, similar to Howard, Camann "had the general mens rea to possess a controlled substance—but actually possessed *more than one*

- 24 -

controlled substance in the same container," and thus by having knowledge that the white powder contained a controlled substance, or at the very least, having the intention to possess the white powder, he thus had the requisite mens rea to possess a controlled substance. *Id.* Bearing in mind the General Assembly's legislative intent to fight the illicit flow of drugs (including where drug dealers mix more than one controlled substance in a capsule or powder), as well as bearing in mind our holding in *Sierra*, we agree with this Court's rationale in *Howard* that "as long as the defendant knows that the capsule contains at least one controlled substance," then "the Commonwealth is not required to prove that a defendant knows each controlled substance that a capsule contains in order to support convictions for both controlled substances contained in the capsule under Code § 18.2-250." *Id.* at 14, 2018 WL 2604993, at *7.[19]

The majority posits that the above rationale as noted in *Howard* "would create strict criminal liability for possessing each additional substance in the mixture beyond the first one." This stark conclusion ignores our finding in *Sierra* that mistaken identity concerning the specific substance in one's possession is not a defense under Code § 18.2-250. *Sierra*, 59 Va. App. at 783-84. To further allow a defendant to claim "mistaken identity" about a powder he knew contained a controlled substance would defy the logic undergirding the above stated rationale. While I appreciate the majority's concern regarding some of the potentially harsh outcomes that could result from interpreting the statute based on its plain meaning as supported by *Sierra*, such concerns seem to arise from the potential policy implications, not legal interpretation. *See Daily Press, LLC v. Off. of Exec. Sec'y of Supreme Ct.*, 293 Va. 551, 557 (2017) ("Public policy questions concerning where to draw the line . . . fall within the purview of the General Assembly. In a regime of separated powers that assigns to the legislature the responsibility for

---

[19] The General Assembly has not further modified Code § 18.2-250 since the 2018 decision by this Court in *Howard*.

charting public policy, our function is limited to adjudicating . . . question[s] of law[.]"). Our "drug statutes require specific knowledge or intent *as to a general category of unlawful items. The specific unlawful items, however, are found in the penalty section of the scheme.*" *Sierra*, 59 Va. App. at 781 (quoting *United States v. Barbosa*, 271 F.3d 438, 458 (3d Cir. 2001)) (explaining how the reasoning behind 21 U.S.C. § 841 "applies with equal force to Code § 18.2-250"). Thus, we cannot "arbitrarily add specific *mens rea* requirements to elements of an offense where the General Assembly has expressly prescribed what *mens rea* requirements it wishes to impose." *Sierra*, 59 Va. App. at 778. "Such public policy arguments cannot contravene clear statutory language and should be addressed to the legislature, not the courts." *Hartford Underwriters Ins. Co. v. Allstate Ins. Co.*, 301 Va. 460, 474 n.12 (2022).

Consequently, for all of these reasons, I would have affirmed Camann's convictions for possession of both fentanyl and etizolam pursuant to Code § 18.2-250, and therefore, I respectfully dissent.

## VIRGINIA:

*In the Court of Appeals of Virginia on* **Tuesday** *the* **28th** *day of* **March, 2023**.

Dana Mark Camann, Jr.,                                                                                  Appellant,

 against            Record No. 0243-22-4
                    Circuit Court Nos. CR21000213-00 through CR21000216-00

Commonwealth of Virginia,                                                                            Appellee.

Upon a Petition for Rehearing En Banc

Before the Full Court

On March 14, 2023 came the appellee, by the Attorney General of Virginia, and filed a petition requesting that the Court set aside the judgment rendered herein on February 28, 2023, and grant a rehearing *en banc* on the issue(s) raised in the petition.

On consideration whereof and pursuant to Rule 5A:35 of the Rules of the Supreme Court of Virginia, the petition for rehearing *en banc* is granted and the appeal of those issues is reinstated on the docket of this Court. The mandate previously entered herein is stayed pending the decision of the Court *en banc*.

The parties shall file briefs in compliance with the schedule set forth in Rule 5A:35(b). The appellant shall attach as an addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the Court in this matter. An electronic version of each brief shall be filed with the Court and served on opposing counsel.[1]

A Copy,

Teste:

A. John Vollino, Clerk

By:    *original order signed by a deputy clerk of the*
       *Court of Appeals of Virginia at the direction*
       *of the Court*

Deputy Clerk

---

[1] The guidelines for filing electronic briefs and appendices can be found at www.courts.state.va.us/online/vaces/resources/guidelines.pdf.

COURT OF APPEALS OF VIRGINIA

Present: Judges Athey, Chaney and Raphael
Argued by videoconference


DANA MARK CAMANN, JR.

                                    MEMORANDUM OPINION[*] BY

v.       Record No. 0243-22-4               JUDGE STUART A. RAPHAEL
                                        FEBRUARY 28, 2023

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF FREDERICK COUNTY
William W. Eldridge, IV, Judge

(Jason E. Ransom; Ransom/Silvester, on brief), for appellant.
Appellant submitting on brief.

Rebecca M. Garcia, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

While investigating a public-indecency complaint, the sheriff's deputies here spoke with

appellant Dana Mark Camann, Jr., in the parking lot of a convenience store. During that

encounter, one deputy noticed that Camann was hiding something under his shoe and told him to

move his foot. Camann did so, revealing aluminum foil with burnt residue and a straw. The

deputies arrested Camann and searched his person, discovering a white powder in a cellophane

wrapper in his wallet and pills in a pill bottle in his pocket. Testing of the white powder revealed

that it contained two controlled substances: fentanyl and etizolam. The pills tested positive for

two other controlled substances. Camann was convicted of three felony counts of possessing a

Schedule I or II controlled substance and one misdemeanor count of possessing a Schedule IV

controlled substance, all in violation of Code § 18.2-250.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

We reject Camann's argument that the trial court erred in failing to grant his motion to suppress the evidence.[1]  While we agree that a Fourth Amendment seizure occurred when the deputy told Camann to move his foot, the directive was part of a lawful investigative detention that was supported by reasonable suspicion.  Upon discovering the burnt residue on the improvised smoking device that Camann was hiding, the deputies had probable cause to arrest him for drug possession.  They then conducted a lawful search incident to arrest, discovering the narcotics that he was convicted of possessing.

We agree with Camann, however, that there was insufficient evidence to support his conviction for felony possession of etizolam.[2]  While Code § 18.2-250 permits a defendant to be convicted for knowingly possessing *a* controlled substance without knowing *which* controlled substance he has, it does not impose strict liability for each subsequent controlled substance that may be found in the mixture.  Because the Commonwealth failed to prove that Camann knew that the white powder in his possession contained more than one controlled substance, we reverse his conviction for possessing etizolam.

BACKGROUND

After 1:00 a.m. on September 10, 2020, Deputies Spears and Russell of the Frederick County Sheriff's Office responded to a report of a man masturbating outside a 7-Eleven convenience store.  When Deputy Russell arrived, Camann was standing on a sidewalk in the parking lot, with his back against the side of the store.

Deputy Russell was the first on the scene.  Deputy Spears arrived soon after, and his body-camera footage was introduced into evidence.  Deputy Russell conversed briefly with Camann before entering the store to interview the customer and employee who had reported the

---

[1] Judge Chaney dissents from this conclusion.

[2] Judge Athey dissents from this conclusion.

- 2 -

incident. While Deputy Russell was inside, Deputy Spears engaged in "normal small talk" with Camann before telling him why the police had been called. Camann denied any wrongdoing and continued to stand in place. Deputy Russell returned, telling Camann that witnesses claimed to have seen him masturbating.

Camann reacted indignantly, but as he shifted his weight back and forth, Deputy Spears noticed that Camann appeared to be hiding something under his left shoe. After Camann moved his foot enough to offer a glimpse of the aluminum foil underneath, Deputy Spears said, "move your foot, move your foot." Camann did so, revealing a blue plastic straw and a piece of aluminum foil with burnt residue. From his training and experience, Deputy Spears knew that people commonly "use aluminum foil and plastic straws" to smoke narcotics. Upon seeing the burnt residue on the aluminum foil, Spears decided to arrest Camann.

After placing Camann in handcuffs, Deputy Spears read him his *Miranda*[3] rights and subsequently searched his pockets. Spears found more foil and a straw, similar to what Camann had been hiding under his foot, a cellophane wrapper in Camann's wallet containing a white powdery substance, and pills in a pill bottle.

Subsequent testing revealed that the white powdery substance was a mixture of fentanyl, a Schedule II controlled substance, and etizolam, a Schedule I controlled substance.[4] The mixture weighed 0.056 gram. One pill in the pill bottle contained amphetamine, a Schedule II controlled substance; another contained clonazepam, a Schedule IV controlled substance.[5] The aluminum foil and straw that Camann was hiding under his shoe were not tested for narcotics. The grand jury returned four indictments against Camann: three felony counts of possessing a

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[4] *See* Code §§ 54.1-3446 (Schedule I), 54.1-3448 (Schedule II).

[5] *See* Code § 54.1-3452 (Schedule IV).

Schedule I or II controlled substance and one misdemeanor count of possessing a Schedule IV controlled substance.

Camann moved to suppress the evidence, claiming that the search and seizure violated his Fourth Amendment rights. The trial court denied the motion, finding: (1) the interaction between Deputy Spears and Camann began as a consensual encounter; (2) Deputy Spears's asking Camann to move his foot was "not . . . an order" and was "not a seizure"; (3) there was no expectation of privacy in the "public area" beneath Camann's foot; (4) there was probable cause to arrest Camann after seeing the straw and aluminum foil with burnt residue; and (5) the drugs in Camann's pockets were legally discovered as part of a search incident to arrest.[6]

At the jury trial that followed, the Commonwealth's evidence consisted of Deputy Spears's testimony, his body-camera footage, and a certificate of analysis detailing the results of the lab tests on the drugs found in Camann's possession. The court denied Camann's motion to strike the Commonwealth's evidence. Camann then testified. He admitted that he was a drug addict, that he had tried to conceal the foil underfoot, that the foil contained "a drug," and that the items found in his pockets were all his. He admitted knowing that the white powder was fentanyl but denied knowing that it also contained etizolam, a drug he'd never heard of.

The court denied Camann's renewed motion to strike the etizolam charge. Relying on *Sierra v. Commonwealth*, 59 Va. App. 770 (2012), the court held that Camann "b[ore] the risk . . . of punishment for whatever substance was there." Over Camann's objection, the jury was instructed that "[t]he Commonwealth [wa]s not required to prove that [Camann] knew the precise substance he [wa]s alleged to have possessed, only that he knew the substance was a controlled substance." In closing, the prosecutor argued, based on that instruction, that "You don't need to know whether it is heroin or fentanyl or etizolam or cocaine or anything else,

---

[6] Judge Alexander Iden presided at the hearing on the motions to suppress.

amphetamines, meth.  As long as you know that you are possessing *something* illegal you are guilty of *every one of those things . . . .*"

The jury convicted Camann on all four charges.  Although the original indictments did not identify the specific drug involved, the verdict form signed by the jury foreperson correlated the drugs to the indictments: CR21-213 (amphetamine); CR21-214 (fentanyl); CR21-215 (etizolam); and CR21-216 (clonazepam).  The court entered judgment on the jury verdict and sentenced Camann to two years' incarceration with one year suspended for felony possession of amphetamine, two years with two years suspended on each of the felony convictions for possessing fentanyl and etizolam, and 180 days with 180 days suspended on the misdemeanor conviction for possessing clonazepam.  Camann noted a timely appeal.

ANALYSIS

Camann challenges the trial court's denial of his motion to suppress and the sufficiency of the evidence to support his felony conviction for possessing etizolam.

> A. *The trial court did not err in denying the suppression motion (Assignment of Error 1).*

Camann argues that the trial court erred in denying his motion to suppress the narcotics seized from his wallet because the search of his wallet was not supported by probable cause.[7]  If a person is "illegally seized within the meaning of [the] Fourth Amendment . . . any evidence derived as a result of that seizure [i]s subject to suppression under the exclusionary rule." *Watson v. Commonwealth*, 19 Va. App. 659, 662 (1995).  "The exclusionary rule operates not

_____

[7] Camann's assignment of error relates only to the narcotics seized from Camann's "wallet"—the fentanyl and etizolam.  The assignment of error omits any reference to the pills found in the pill bottle.  Accordingly, this appeal involves no challenge to Camann's convictions for possessing amphetamine [CR21-213] and clonazepam [CR21-216]. *See* Rule 5A:20(c)(1) ("Only assignments of error listed in the brief will be noticed by this Court."); *Riddick v. Commonwealth*, 72 Va. App. 132, 146 (2020) (stating that an appellate court "cannot 'consider issues . . . not encompassed by [the] assignment of error'" (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 290 (2017))).

only against evidence seized and information acquired during an unlawful search or seizure but also against derivative evidence discovered because of the unlawful act." *Id.* (quoting *Warlick v. Commonwealth*, 215 Va. 263, 265 (1974)).

"When challenging the denial of a motion to suppress evidence on appeal, the defendant bears the burden of establishing that reversible error occurred." *Street v. Commonwealth*, 75 Va. App. 298, 303-04 (2022) (quoting *Mason v. Commonwealth*, 291 Va. 362, 367 (2016)). "Appellate review of a suppression ruling involving a Fourth Amendment challenge presents a mixed question of law and fact." *Id.* at 304 (citation omitted). "'This Court is "bound by the trial court's findings of historical fact unless plainly wrong or without evidence to support them."' 'However, the Court reviews *de novo* the overarching question of whether a search or seizure violated the Fourth Amendment.'" *Moreno v. Commonwealth*, 73 Va. App. 267, 274 (2021) (citation omitted) (quoting *Williams v. Commonwealth*, 71 Va. App. 462, 475 (2020)). "[O]ur review includes evidence presented at both the suppression hearing and the trial." *Id.* (quoting *Williams*, 71 Va. App. at 475).

"Police-citizen confrontations generally fall into one of three categories." *McGee v. Commonwealth*, 25 Va. App. 193, 198 (1997) (en banc). All three types occurred in this case. "First, there are consensual encounters which do not implicate the Fourth Amendment." *Id.* Camann admits that his encounter with the deputies was consensual up until Deputy Spears told him to move his foot. Second, "there are brief investigatory stops, commonly referred to as '*Terry*' stops, which must be based upon reasonable, articulable suspicion that criminal activity is or may be afoot." *Id.*; *see Terry v. Ohio*, 392 U.S. 1, 27 (1968). We conclude in the first section below that Deputy Spears's statement to Camann to "move your foot" transformed the consensual encounter into an investigative detention. But Spears's directive was a minimal imposition on Camann's liberty, and it was supported by reasonable suspicion that Camann was

engaged in criminal activity. The third type of encounter involves "'highly intrusive, full-scale arrests' or searches which must be based upon probable cause to believe that a crime has been committed by the suspect." *McGee*, 25 Va. App. at 198 (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). We conclude in the second section below that Spears's discovery of the burnt residue on the improvised smoking device that Camann was hiding under his shoe gave Spears probable cause to arrest Camann for possessing a controlled substance.

### 1. *The deputy's request for Camann to move his foot was an investigative detention supported by reasonable suspicion.*

The admissibility of the narcotics ultimately found in Camann's pockets depends on whether Deputy Spears's telling Camann, "move your foot," constituted an illegal seizure.[8] To answer that question, we must consider (1) whether Camann was seized at all when Deputy Spears told him to move his foot and, if so, (2) whether the seizure was an investigatory detention, for which reasonable suspicion was required, or an arrest, which would have required probable cause. *McGee*, 25 Va. App. at 198. Camann argues that he was seized because Deputy Spears's words signaled to him that he was not free to leave.

---

[8] The Commonwealth misplaces its contention that Camann had no reasonable expectation of privacy in the discarded foil under his shoe. The Commonwealth likens what happened here to searching the garbage left for the trash collector in a public place, which is not forbidden by the Fourth Amendment. *See California v. Greenwood*, 486 U.S. 35, 40-42 (1988). The Commonwealth contrasts that scenario with searching someone's shoe while the person is wearing it, where a reasonable expectation of privacy attaches. *See Sheler v. Commonwealth*, 38 Va. App. 465, 477-78 (2002). While Camann argued in the trial court that Deputy Spears's telling him to move his foot was both a search and a seizure, he pursues only the seizure claim here. In other words, Camann does not argue that the space under his shoe was illegally *searched*; he claims that his person was illegally *seized* when Spears told him to move his foot. "The right to security in person and property protected by the Fourth Amendment may be invaded in quite different ways by searches and seizures. A *search* compromises the individual interest in privacy; a *seizure* deprives the individual of dominion over his or her person or property." *Horton v. California*, 496 U.S. 128, 133 (1990) (emphases added). At this step of the inquiry, we evaluate whether Camann's person was illegally seized, not whether the space under his foot was illegally searched.

- 7 -

We agree that Camann was seized when Deputy Spears told him to move his foot, not because Camann was not free to leave, but because a reasonable person in Camann's position would not have felt free to keep his foot planted. "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry*, 392 U.S. at 19 n.16. A seizure ordinarily occurs when "a reasonable person would have believed that he was not free to leave." *Piggott v. Commonwealth*, 34 Va. App. 45, 49 (2000) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). But "when the person . . . has no desire to leave, the degree to which a reasonable person would feel that he or she could leave is not an accurate measure of the coercive effect of the encounter." *Florida v. Bostick*, 501 U.S. 429, 435-36 (1991). Rather, "the appropriate inquiry is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *Id.* at 436.

Camann wanted to remain where he stood—he wanted to keep his foot firmly planted. We must therefore ask whether a reasonable person would have felt free to remain where he stood after Deputy Spears said, "move your foot." The Commonwealth argues that we are bound by the trial court's finding that Deputy Spears's statement was a request, not a demand. Even if it was a request, however, the relevant inquiry is the effect of that request on a reasonable person in Camann's position. It is not dispositive that the statement might not have been an order. The question is whether a reasonable person would have felt "free to decline the officers' requests." *Bostick*, 501 U.S. at 436.

We conclude that a reasonable person in Camann's position would not have felt free to defy the deputies by keeping his foot planted. Camann had a wall at his back and a deputy on either side of him. The deputies told him that he had been accused of masturbating outside the 7-Eleven. "[W]hen a police officer confronts a person and informs the individual that he or she

- 8 -

has been specifically identified as a suspect in a particular crime which the officer is investigating, that fact is significant among the 'totality of the circumstances' . . . ." *McGee*, 25 Va. App. at 200. That revelation can "'convey a message that compliance with their requests is required' and 'that failure to cooperate would lead only to formal detention.'" *Id.* (first quoting *Bostick*, 501 U.S. at 435; and then quoting *United States v. Berry*, 670 F.2d 583, 597 (5th Cir. 1982)).

We disagree with the Commonwealth that Camann "voluntarily moved his foot in response to the request." Camann's movement was not "voluntary" because a reasonable person would not have felt free to decline Deputy Spears's request. That Camann instantly complied— even though he did not want to—suggests that he thought he *had* to. Under the circumstances, that was a reasonable conclusion. The "seizure of a person requires either physical force by the police officer or, 'where that is absent, *submission* to the assertion of authority.'" *Beasley v. Commonwealth*, 60 Va. App. 381, 392 (2012) (quoting *California v. Hodari D.*, 499 U.S. 621, 626 (1991)). Camann submitted to the deputy's authority here.

We must next determine whether that seizure was made during an investigative detention or an arrest, for that characterization determines the level of suspicion required to justify the deputies' actions. *McGee*, 25 Va. App. at 198. "An investigatory stop is permissible under the Fourth Amendment if supported by reasonable suspicion," *Ornelas v. United States*, 517 U.S. 690, 693 (1996), while a warrantless arrest requires probable cause to believe that a crime has been or is being committed, *see Cromartie v. Billings*, 298 Va. 284, 300 (2020). The Supreme Court of the United States has recognized the "difficult line-drawing problems in distinguishing an investigative stop from a *de facto* arrest." *United States v. Sharpe*, 470 U.S. 675, 685 (1985). There are no rigid time limitations on investigative detentions or bright-line rules for evaluating whether a seizure is an investigatory stop or a de facto arrest. *Id.* The "scope of the intrusion

permitted [during an investigatory stop] will vary" with each case. *Florida v. Royer*, 460 U.S. 491, 500 (1983). "The test is whether the police methods were calculated to confirm or dispel the suspicion quickly and with minimal intrusion upon the person detained." *Washington v. Commonwealth*, 29 Va. App. 5, 15 (1999).

Applying that test, we find that Deputy Spears's request that Camann move his foot was part of an investigative detention, not an arrest, because it was a minimal intrusion upon Camann's liberty. Camann did not have to move from where he was standing on the sidewalk of the convenience store, let alone leave the premises. Deputy Spears's suspicions would have been confirmed or refuted in an instant by Camann's simply moving his foot an inch or two in any direction. Such a minimal intrusion on liberty is the hallmark of an investigative detention.

To justify telling Camann to move his foot, therefore, Deputy Spears needed only "reasonable, articulable suspicion that [Camann was] engag[ed] in, or [wa]s about to engage in, criminal activity." *Turner v. Commonwealth*, 75 Va. App. 491, 500 (2022) (quoting *McGee*, 25 Va. App. at 202). "The requisite level of *belief*, when calibrated to reasonable suspicion, is less than probable cause, less than a preponderance, and certainly less than beyond a reasonable doubt." *Hill v. Commonwealth*, 297 Va. 804, 817 (2019). A reasonable suspicion must not be "'the product of a volatile or inventive imagination' or one 'undertaken simply as an act of harassment.'" *Id.* (quoting *Terry*, 392 U.S. at 28). "In reviewing whether an officer possessed reasonable, articulable suspicion sufficient to justify a seizure, a reviewing court must consider 'the totality of the circumstances—the whole picture.'" *Mitchell v. Commonwealth*, 73 Va. App. 234, 247 (2021) (quoting *Sokolow*, 490 U.S. at 8).

Deputy Spears had reasonable suspicion to tell Camann to move his foot. Camann was standing in place, noticeably keeping his left shoe planted as he shifted his weight back and forth. Deputy Spears could see a piece of aluminum foil sticking out from beneath Camann's

shoe. Through his training and experience, Spears knew that aluminum foil is often used with a straw to smoke narcotics. Although Spears did not at first see the straw or the burnt residue, a police officer in Deputy Spears's position could form a reasonable belief that Camann was engaged in criminal, drug-related activity and trying to hide the evidence. Thus, Deputy Spears had "more than a hunch"; his suspicion "flow[ed] reasonably from articulable facts." *Asble v. Commonwealth*, 50 Va. App. 643, 648 (2007). What is more, the reasonableness of Spears's suspicion was corroborated by Camann's admission at trial that he was "intentionally hiding what was under [his] foot" because he "knew it was a drug and . . . knew that it is illegal to possess drugs." We thus conclude that the investigatory detention that occurred when Deputy Spears said "move your foot" was properly supported by reasonable suspicion.

> 2. *The deputies' discovery of burnt residue on the improvised smoking device Camann was concealing gave them probable cause to arrest him for possession of a controlled substance.*

We agree with the trial court that the deputies' discovery of what Camann was hiding under his foot gave them probable cause to arrest him. "Probable cause exists when the facts and circumstances known to the officer 'are sufficient to warrant a person of reasonable caution to believe that an offense has been or is being committed.'" *Park v. Commonwealth*, 74 Va. App. 635, 646 (2022) (quoting *Al-Karrien v. Commonwealth*, 38 Va. App. 35, 47 (2002)). "This is an objective standard that focuses on the totality of the facts and circumstances. It involves a much lower evidentiary standard than proof beyond a reasonable doubt." *Id.* (citation omitted).

In assessing probable cause, "we must consider what the 'totality of the facts and circumstances' would have 'reasonably meant to a trained police officer.'" *Curley v. Commonwealth*, 295 Va. 616, 622 (2018) (quoting *Jones v. Commonwealth*, 279 Va. 52, 59 (2010)). That "includes, of course, an officer's 'common-sense conclusions about human behavior.'" *Id.* at 623 (quoting *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 587 (2018)).

- 11 -

Though an officer's "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis," *Whren v. United States*, 517 U.S. 806, 813 (1996), "a police officer may draw inferences based on his own experience in deciding whether probable cause exists," *Ornelas*, 517 U.S. at 700.

When Camann moved his foot, Deputy Spears discovered a straw alongside the aluminum foil that Camann was concealing. As Spears testified and as the body-camera footage showed, the foil contained burnt residue. As noted above, Deputy Spears testified that, based on his "training and experience," it is common for people to use aluminum foil and a plastic straw to smoke narcotics. To a layperson, those items might seem like litter, but to Deputy Spears, whose testimony about his "training and experience" we must give "due weight," *Ornelas*, 517 U.S. at 700, they reasonably suggested drug possession.

Finding burnt residue on an improvised device for smoking narcotics created probable cause to believe that Camann was in possession of a controlled substance. We have held (and our Supreme Court has affirmed) that "the finding of white powder residue on a cut-off straw by an officer experienced in investigating crimes involving narcotics is sufficient to constitute probable cause"—in that case, probable cause to justify a warrantless search of the defendant's vehicle. *Carson v. Commonwealth*, 12 Va. App. 497, 503, *aff'd en banc*, 13 Va. App. 280 (1991), *aff'd*, 244 Va. 293 (1992).

We also found the appearance of drug residue sufficient to constitute probable cause in *Commonwealth v. Ramey*, 19 Va. App. 300, 304 (1994). The police officer there found the suspect in possession of an improvised smoking device—a plastic bottle covered with foil that was punched with holes—and the foil had "carbon burn marks on it." *Id.* at 301. "Because of the officer's experience with drugs, the bottle appeared to him to be a homemade 'bong' used for smoking illegal drugs." *Id.* "The officer seized the device and arrested the defendant, who was

later charged with possession of cocaine because of cocaine residue on the foil." *Id.* at 302. We held that the officer had probable cause to seize the device despite that he could not determine what drug had been smoked. *Id.* at 304. "Because of the distinctive character of the plastic bottle with foil on top and the highly *unlikely* event that it would have a legitimate use, the officer had probable cause to believe that the 'homemade bong'" was evidence of a crime. *Id.* (emphasis added).[9]

In short, since Spears had probable cause to arrest Camann for possession of narcotics, "the subsequent search" of Camann "was a lawful search incident to arrest under the Fourth Amendment." *Perry v. Commonwealth*, 280 Va. 572, 582 (2010). The trial court thus committed no error in denying Camann's motion to suppress the evidence.

B. *The evidence did not support the etizolam conviction (Assignment of Error 2).*

Camann also assigns error to the trial court's refusal to grant his motion to strike the Commonwealth's evidence on the etizolam charge. He argues that, for a defendant to be convicted of two felonies for possessing a single mixture containing two different controlled substances, the Commonwealth must prove that the defendant knew that the mixture contained more than one controlled substance. We agree.

---

[9] Courts in other jurisdictions have likewise found that the discovery of drug residue on the defendant's person or on a narcotics pipe found in the defendant's possession provided probable cause to arrest the suspect for possession of a controlled substance. *See State v. Rose*, 282 P.3d 1087, 1093 (Wash. 2012) (en banc) (finding probable cause for a warrantless arrest "for possession of a controlled substance" when the officer "had a plain view of a glass pipe, with a white residue inside, that in his training and experience he suspected were consistent with drug possession"); *People v. Edwards*, 925 N.E.2d 576, 577 (N.Y. 2010) ("Because drug residue was first seen [on the defendant's hand] while the police had a justifiable basis to continue the detention for the traffic infraction, that observation provided probable cause to arrest and search defendant."); *Bright v. State*, 455 S.E.2d 37, 52 (Ga. 1995) ("The officer's subsequent observation of a crack pipe and of crack cocaine residue on the pipe was probable cause for the arrest for possession of a controlled substance.").

*1. Code § 18.2-250 requires knowing possession for each count charged.*

Mens rea means "[t]he state of mind that the prosecution, to secure a conviction, must prove that a defendant had when committing a crime." *Mens Rea*, *Black's Law Dictionary* (11th ed. 2019). The term is often used interchangeably with "scienter." *E.g.*, *Esteban v. Commonwealth*, 266 Va. 605, 606-07 (2003); *Maye v. Commonwealth*, 213 Va. 48, 49 (1972) (per curiam).

In interpreting the mens rea element required to convict for drug possession under Code § 18.2-250, we do not write on a clean slate. We held in *Sierra* "that the plain language of Code § 18.2-250 requires a defendant to know that the substance he possesses is in fact a controlled substance, but that it does not require him to know precisely what controlled substance it is." 59 Va. App. at 775. Thus, if a person thinks he has heroin, but it turns out to be fentanyl, that person has still "knowingly or intentionally . . . possess[ed] a controlled substance." Code § 18.2-250; *Sierra*, 59 Va. App. at 783-84 ("A claim by a defendant that he knew he was possessing a controlled substance, but was unaware or mistaken as to the precise identity of that substance, is not a defense under Code § 18.2-250.").

We have also held that a defendant who possesses multiple caches of the *same* controlled substance can be convicted of only one violation of Code § 18.2-248, which prohibits possession with intent to distribute, unless the Commonwealth can prove "separate intents" respecting each cache. *Lane v. Commonwealth*, 51 Va. App. 565, 580-81 (2008). We based that conclusion on the Double Jeopardy Clause of the Fifth Amendment, which "protects against multiple punishments for the same offense." *Id.* at 576 (quoting *Brown v. Ohio*, 432 U.S. 161, 165 (1977)).

- 14 -

To date, however, neither our Supreme Court nor this Court has addressed in a published decision[10] whether two violations of Code § 18.2-250 can be sustained when a defendant possesses two *different* controlled substances so mixed or fused together as to make them indivisible. Courts in other jurisdictions have divided on whether only a single prosecution is permitted in those circumstances.[11] But Camann did not argue that he could be convicted of only a single felony for possessing the mixture of fentanyl and etizolam. He argues instead that the prosecution failed to prove that he had the mens rea to support the second conviction. We therefore assume without deciding that two prosecutions are permissible for possessing a single mixture, provided the mens rea requirement is satisfied.

The inquiry then becomes whether the prosecution, to obtain two convictions under Code § 18.2-250, must prove that the defendant knew that a single mixture in his possession contained two controlled substances. We conclude that the statute indeed places that burden on the prosecution and that the prosecution failed to shoulder its burden here. Our conclusion is supported by the text of Code § 18.2-250, our Supreme Court's rejection of a constructive knowledge requirement for possession, the history of this code section, and the general presumption that serious offenses require guilty knowledge.

---

[10] We address below our unpublished decision in *Howard v. Commonwealth*, No. 0780-17-1, 2018 WL 2604993 (Va. Ct. App. June 5, 2018).

[11] *Compare State v. Morgan*, 140 N.E.3d 171, 178 (Ohio Ct. App. 2019) ("Clearly, if an individual has a baggie of, for example, heroin, in his left pocket and a baggie of fentanyl in his right pocket, he could be convicted and sentenced for each substance. We see no reason why an individual who chooses to engage in the sale or use of Schedule I controlled substances should escape responsibility for both Schedule I controlled substances simply by mixing one substance into the other."), *with State v. Owens*, 579 A.2d 766, 768 (Md. 1990) ("Taking a common sense view of the matter, we are simply not persuaded that the legislature intended separate prosecutions and punishments for possession of PCP and possession of marihuana where the two substances have been, for all practical purposes, irrevocably joined as one.").

*a) The text of Code § 18.2-250*

We begin with the text of the statute. "Questions of statutory interpretation . . . are subject to *de novo* review on appeal, and we owe no deference to the circuit court's interpretation of the statutory scheme." *Esposito v. Va. State Police*, 74 Va. App. 130, 133 (2022). "When construing a statute, [the Court's] primary objective 'is to ascertain and give effect to legislative intent,' as expressed by the language used in the statute." *Va. Elec. & Power Co. v. State Corp. Comm'n*, 295 Va. 256, 262-63 (2018) (quoting *Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 425 (2012)). "We must determine the legislative intent by what the statute says and not by what we think it should have said." *Miller & Rhoads Bldg., L.L.C. v. City of Richmond*, 292 Va. 537, 541-42 (2016) (quoting *Carter v. Nelms*, 204 Va. 338, 346 (1963)).

The statutory text here strongly suggests that proof of mens rea is required to convict a defendant under *each* indictment that alleges illegal possession of a Schedule I or II controlled substance:

> A. It is unlawful for any person *knowingly or intentionally* to possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription . . . .
>
> . . . .
>
> (a) Any person who violates this section *with respect to any controlled substance* classified in Schedule I or II of the Drug Control Act shall be guilty of a Class 5 felony . . . .

Code § 18.2-250 (emphases added). This language establishes a clear mens rea requirement, as it criminalizes only knowing or intentional possession. Nothing in the text supports the notion that as long as the defendant knows that he possesses *one* controlled substance, he can be convicted of as many felonies as the number of controlled substances found in the mixture.

We disagree with the Commonwealth's contrary view that if a defendant knowingly possesses "at least one controlled substance, . . . that knowledge is sufficient to convict him of possession of" every other controlled substance that may be identified through laboratory

- 16 -

analysis. The Commonwealth's reading is not supported by the phrase "any controlled substance" in subpart (a), which provides that a "person who violates this section with respect to *any* controlled substance" is guilty of a Class 5 felony if the substance is listed on Schedule I or II. Code § 18.2-250(A)(a) (emphasis added). Quite simply, a defendant has not violated Code § 18.2-250 unless he does so "knowingly or intentionally." Code § 18.2-250(A). Nothing in the word "any" justifies decoupling the mens rea from the actus reus required for *each* conviction for possessing a controlled substance.[12]

### b) *The insufficiency of presumed knowledge*

The Commonwealth's position would also revive a theory of constructive knowledge of drug possession that has been roundly rejected by the Supreme Court. More than 30 years ago, our Court held in *Josephs v. Commonwealth*, 10 Va. App. 87 (1990) (en banc), that "[p]ossession of a controlled drug gives rise to an inference of the defendant's knowledge of its character." *Id.* at 101. But the Supreme Court overruled *Josephs* and rejected that presumption in *Young v. Commonwealth*, 275 Va. 587 (2008). *Young* made clear that "[a]ctual or constructive possession alone is not sufficient. 'The Commonwealth must also establish that the defendant intentionally and consciously possessed it *with knowledge of its nature and character*.'" *Id.* at 591 (citation omitted) (quoting *Burton v. Commonwealth*, 215 Va. 711, 713 (1975)). The Court called that knowledge "an *essential* element of the crime." *Id.* (emphasis added).

---

[12] Even if the phrase "any controlled substance" supported the Attorney General's strict-liability reading, it would at best render the statutory text ambiguous given the requirement in Code § 18.2-250(A) that a person "knowingly or intentionally" possess a controlled substance. Such ambiguity would call for applying the rule of lenity, thus construing the statute "strictly against the state and favorably to the liberty of the citizen." *Morgan v. Commonwealth*, ___ Va. ___, ___ (Dec. 29, 2022) (quoting *Sutherland v. Commonwealth*, 109 Va. 834, 835 (1909)). As the discussion below confirms, applying the rule of lenity here would not "conflict with the implied or express intent" of the General Assembly and would not create "an overly 'restrictive interpretation of the statute.'" *Id.* (first quoting *Kohl's Dep't Stores, Inc. v. Va. Dep't of Tax'n*, 295 Va. 177, 188 n.8 (2018); and then quoting *McGinnis v. Commonwealth*, 296 Va. 489, 504 (2018)).

By permitting multiple convictions for possession while treating as irrelevant whether the defendant knowingly possessed more than one controlled substance, the Attorney General would eliminate knowledge as an essential element of the additional counts charged. The Commonwealth conceded at oral argument that, under its reading of the statute, a defendant who thought he possessed just one controlled substance could be convicted of 15 felonies if chemical testing revealed the mixture contained 15 substances listed on Schedules I or II. Given that more than 400 controlled substances combined appear on those schedules, *see* Code §§ 54.1-3446, 54.1-3448, it takes little imagination to envision double-digit felony indictments—each carrying a maximum punishment of ten years in prison, Code § 18.2-10(e)—against a defendant who thought he possessed just one illegal drug. The Commonwealth's position creates a strict-liability regime for extra felony counts that cannot be reconciled with *Young*.

### c) The history of Virginia's possession statute

The history of Virginia's possession statute further corroborates our conclusion that a conviction for possession under Code § 18.2-250 must be supported by proof of knowing possession.

"[D]rug possession was never a common law crime," *State v. Sitton*, No. 45088-7-II, 2015 WL 161299, *4 (Wash. Ct. App. Jan. 13, 2015), and Virginia did not criminalize the possession of illicit drugs until the twentieth century. In 1908, Virginia criminalized the distribution of cocaine without a prescription, treating cocaine possession as "prima facie evidence of an intent to sell, give away or otherwise dispense the same." 1908 Va. Acts ch. 255, §§ 1, 2 (codified at 1 Code of 1919, §§ 1696-97). The Supreme Court of Virginia interpreted that provision to require *knowing* possession, quoting a popular treatise for the proposition that a defendant "can only be required to account for the possession of things which he actually and

knowingly possessed." *Henderson v. Commonwealth*, 130 Va. 761, 766-77 (1921) (quoting 3

Simon Greenleaf, *A Treatise on the Law of Evidence* § 33 (16th ed. 1899)).

In 1932, the National Conference of Commissioners on Uniform Laws ("National

Conference") proposed the Uniform Narcotic Drug Act, *see* Richard L. Braun, *Uniform*

*Controlled Substances Act of 1990*, 13 Campbell L. Rev. 365, 365 (1991), which was

"universally adopted by the states," *Ritter v. Commonwealth*, 210 Va. 732, 742 (1970).  Virginia

adopted it in 1934.  *See* 1934 Va. Acts ch. 86; Code of 1942, §§ 1654(1) to 1654(25); Code of

1950, §§ 54-487 to 54-519.

Section 2 of the Act made it "unlawful for any person to manufacture, possess, have

under his control, sell, prescribe, administer, dispense, or compound any narcotic drug, except as

authorized in this act."  1934 Va. Acts ch. 86, § 2; Code of 1942, § 1654(2); Code of 1950,

§ 54-488.[13]  Noticeably absent from the text was any requirement that a person *knowingly*

possess a narcotic drug.

By 1963, however, most courts to consider the question had agreed that scienter was

required, despite that "[k]nowledge of the alleged possessor, or his intention to possess, is not

mentioned by the language of § 2."  B. Finberg, *What constitutes "possession" of a narcotic*

*drug proscribed by § 2 of the Uniform Narcotic Drug Act*, 91 A.L.R.2d 810, 821 (1963).  In

1970, our Supreme Court joined that consensus, holding that scienter was needed to prove a

violation:

> In order to convict a defendant of "possession" of a
> narcotic drug, within the meaning of Virginia's Uniform Narcotic
> Drug Act, it generally is necessary to show that defendant was

---

[13] The Act defined "narcotic drug" as "coca leaves and opium, and every substance not chemically distinguishable from them."  Code of 1942, § 1654(1), (13).  The General Assembly later expanded the definition to include "cannabis."  1952 Va. Acts ch. 451 (amending then-Code § 54-487); *Johnson v. Commonwealth*, 211 Va. 815, 819-20 (1971).

> aware of the presence and character of the particular substance and was intentionally and consciously in possession of it.

*Ritter*, 210 Va. at 741; *see Sierra*, 59 Va. App. at 782 n.8 (tracing the scienter standard adopted in *Ritter* to the 1963 A.L.R. annotation).

Also in 1970, the National Conference promulgated a new uniform law, the Uniform Controlled Substances Act, to replace the Uniform Narcotic Drug Act. *See* Braun, *supra*, at 365. The new uniform law was also quickly adopted by most States. *Id*. Virginia called its version of the law the "Drug Control Act." *See* 1970 Va. Acts ch. 650. The Drug Control Act criminalized the possession of any "controlled drug," *id.* (§ 54-524.101(c)), defined as "a drug or substance in Schedules I through V" of the act, *id.* (§ 54-524.2(b)(6)).

The 1970 Act codified the scienter requirement that *Ritter* had found implicit under the 1934 law: "It is unlawful for any person *knowingly or intentionally* to possess a controlled drug unless such substance was obtained directly or pursuant to a valid prescription or order from a practitioner . . . ." Code § 54-524.101(c) (emphasis added). Other than changing "controlled drug" to "controlled substance," the text of the current statute—Code § 18.2-250—is virtually identical to the 1970 version. And despite many amendments over the years to the Drug Control Act, the General Assembly has never altered the knowing-possession requirement.

In sum, the Supreme Court of Virginia required proof of scienter long before the predecessors to Code § 18.2-250 specified a mens rea requirement, and the General Assembly made clear that the Drug Control Act requires knowing possession. That legislative history undermines the Commonwealth's suggestion that a defendant may be convicted of felony possession for every controlled substance that happens to be found in a mixture in his possession, without proof that the defendant was "intentionally and consciously in possession," *Ritter*, 210 Va. at 741, of more than one controlled substance.

*d)  The presumption of mens rea for serious offenses*

The Commonwealth's position also strays from what Justice Scalia and Professor Garner called the "*Mens Rea* Canon":

> A statute creating a criminal offense whose elements are similar to those of a common-law crime will be presumed to require a culpable state of mind (*mens rea*) in its commission.  All statutory offenses imposing substantial punishment will be presumed to require at least awareness of committing the act.

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 303 (2012).

To be sure, the Supreme Court of Virginia has not yet explicitly adopted the mens rea presumption for serious statutory crimes.  But *Ritter* implicitly did so.  As noted above, the Uniform Narcotic Drug Act created a serious statutory offense, unknown at common law, without specifying any mens rea requirement.  Still, *Ritter* concluded that the statute required proof of knowing possession.  210 Va. at 741.  Likewise, in *Maye*, the Court inferred a scienter requirement in the larceny-after-bailment statute, finding that "the legislature implicitly intended that [scienter] must be proved."  213 Va. at 49.  In *Esteban*, by contrast, the Court held that felony possession of a firearm on school grounds was a "strict liability" offense when the statute contained no explicit knowledge requirement and the Court could discern no intent by the legislature to impose one.  266 Va. at 608-10.  *See generally Clayton v. Commonwealth*, 75 Va. App. 416, 429-31 (2022) (Raphael, J., concurring) (describing the tension between *Esteban* and the mens rea presumption).

For serious offenses that were not crimes at common law, courts in most American jurisdictions, including the Supreme Court of the United States, have recognized a mens rea presumption.  *Id. at* 425-30 & nn.5-6 (collecting authorities).  As Justice Jackson put it in *Morissette v. United States*, 342 U.S. 246 (1952), mens rea is not some "provincial or transient notion" but is "as universal and persistent in mature systems of law as belief in freedom of the

human will and a consequent ability and duty of the normal individual to choose between good and evil." *Id.* at 250. Applying a mens rea presumption for offenses imposing serious punishment reflects "the common-sense intuition that people should not be subject to lengthy prison terms for conduct that they did not know was wrongful." *Clayton*, 75 Va. App. at 433 (Raphael, J., concurring).

We find the mens rea presumption appropriate here too. Given the legacy of *Ritter* and the General Assembly's explicit inclusion of a knowledge requirement in Code § 18.2-250, this is an easy case for recognizing it.

### e) Howard

Finally, we decline the Commonwealth's invitation to resolve this case based on *Howard v. Commonwealth*, No. 0780-17-1, 2018 WL 2604993 (Va. Ct. App. June 5, 2018).[14] *Howard* upheld two convictions under Code § 18.2-250 for the defendant's possession of a single powdery substance determined by chemical testing to contain two Schedule I or II substances, heroin and fentanyl. Slip op. at 2, 14, 2018 WL 2604993, at *1, *7. The defendant in *Howard* argued that if the Commonwealth could not prove that he intended to possess more than one controlled substance in the mixture, then "both of his convictions must be reversed." *Id.* at 1, 2018 WL 2604993, at *1. The Court rejected that claim, under which "the more drugs the capsule contained that appellant has in his possession, the more this Court is required to reverse each of appellant's convictions." *Id.* at 9, 2018 WL 2604993, at *4. We agree that the defendant's theory in *Howard* was misguided.

But "[r]equiring a *mens rea* showing for each count of possession does not make the *first* count of possession any harder to prove, *only the subsequent counts*." Joshua P. Stock, *A Tale of*

---

[14] Citation of an unpublished opinion is "permitted as informative, but will not be received as binding authority." Rule 5A:1(f).

*Two Counts of Possession . . . For One Pill: A Reexamination of the Virginia Court of Appeals's Decision in Howard v. Commonwealth*, 30 Geo. Mason U. Civ. Rts. L.J. 205, 229 (2020).[15] *Howard* failed to grapple with the problem that *not* requiring proof that the defendant knowingly possessed more than one controlled substance creates a strict-liability crime for every additional substance that may be found in the mixture.[16]

We are not persuaded by *Howard*'s policy rationale that imposing criminal liability in this situation is justified by "the General Assembly's considerable efforts to combat the problem of illegal drugs." Slip op. at 5, 2018 WL 2604993, at *3. Combatting illegal drug possession is unquestionably important. But that is not the only value at stake. As shown above, the history of Code § 18.2-250 and its predecessors shows the critical importance of knowledge as "an essential element of the crime." *Young*, 275 Va. at 591. We should not abrogate that protection unless the statute makes it unmistakably clear that the General Assembly intends to create a strict-liability offense.

---

[15] Still, proving that a defendant knowingly possessed a mixture containing more than one controlled substance would not be the impossible burden suggested in Judge Athey's dissent. For example, where a defendant knowingly possessed a drug by its street name, the prosecution might present testimony that the street name is commonly understood to refer to a combination of controlled substances, such as *speedball*, a "mixture of cocaine and heroin." *United States v. Paulino*, 13 F.3d 20, 22 (1st Cir. 1994). *See generally* Drug Enforcement Agency, *Slang Terms and Code Words: A Reference for Law Enforcement Personnel* (July 2018), https://www.dea.gov/sites/default/files/2018-07/DIR-022-18.pdf.

[16] The two out-of-state authorities on which *Howard* relied are also not persuasive. *See Howard*, slip op. at 11-12, 2018 WL 2604993, at *6-7 (discussing *State v. Hall*, 692 S.E.2d 446 (N.C. Ct. App. 2010), and *State v. Woodard*, No. CA2016-09-084, 2017 WL 3128807 (Ohio Ct. App. July 24, 2017)). *Hall* did not address the mens rea requirement for proving multiple counts arising from of possession of a single mixture. And the majority in *Woodard* appeared to assume the need to prove knowing possession of a mixture containing *two* controlled substances (heroin and fentanyl) but split with the dissent over whether the prosecution had successfully proven such knowledge. *Compare Woodard*, 2007 WL 3128807, at *6 n.2 ("Here, a jury found that appellant *knowingly possessed* two separate controlled substances . . . ."), *with id.*, at *8 (Ringland, J., dissenting) ("I have reservations about allowing two convictions under these circumstances where there is absolutely no evidence, either directly or circumstantially, that appellant knew the bag contained two separate opioid drugs.").

## 2. *The Commonwealth failed to prove scienter for the second controlled substance found in the mixture.*

The prosecution failed here to exclude the reasonable hypothesis of innocence that Camann knowingly possessed only one controlled substance—fentanyl—and did not know that the substance was a mixture that contained a second controlled substance. The prosecution had the burden to prove Camann's knowing possession for each count charged. But the prosecution presented no evidence during its case-in-chief to show that Camann knew that there was more than one controlled substance in the white powder found in his wallet. The evidence did not get better for the Commonwealth on the etizolam charge after the defense's case. While Camann admitted that the white powder was his and that he was a drug addict, he testified that he believed that the powder was fentanyl; he had "no idea" that it also contained etizolam, a substance he had "never heard of" before.[17]

The failure of proof here is like that in *Young*. The defendant there was found with a prescription-pill bottle in her purse that contained a tablet that chemical testing revealed to be morphine. 275 Va. at 589. A witness testified that the pill bottle was hers, that she had inadvertently left it behind in the car driven by the defendant, and that the defendant had called to say that she had found the bottle. *Id.* at 590. The Supreme Court held that the evidence could not exclude the reasonable hypothesis of innocence that the defendant did not know of the character of the contents of the pill bottle that turned out to be morphine. *Id.* at 592. The Court observed that the officer "could not determine their nature without submitting them for laboratory analysis, and there is no reason to infer that the defendant was any better informed."

---

[17] Camann was not the only one unfamiliar with etizolam. The prosecutor, the sheriff's deputy, the defense lawyer, and the trial judge all said at different points during the trial that they could not pronounce the name of the drug. The prosecutor called it "the E-drug" for short.

*Id.* "The ambiguous circumstantial evidence concerning the appearance of the bottle and its contents is as consistent with a hypothesis of innocence as it is with that of guilt." *Id.*

The same is true here. The prosecution failed to exclude the reasonable hypothesis of innocence that Camann believed that the white powder contained only one controlled substance—fentanyl. The record lacks evidence to support a finding beyond a reasonable doubt that Camann knew that the white powder was a mixture that contained a second controlled substance as well.

CONCLUSION

We affirm the trial court's decision denying Camann's motion to suppress the evidence, but we reverse Camann's conviction (CR21-215) for possession of a Schedule I or II controlled substance (etizolam).

*Affirmed in part, reversed and final judgment in part.*

Athey, J., concurring in part and dissenting in part.

I agree with the majority that the trial court correctly denied Camann's suppression motion. I also concur with the majority in affirming his conviction for possessing fentanyl. But I disagree with the majority that, to satisfy the mens rea requirement for two separate convictions under Code § 18.2-250, the Commonwealth needed to prove Camann knew he possessed two separate controlled substances. I therefore respectfully dissent from the majority's decision to reverse Camann's conviction for possessing etizolam. Instead, I would have also affirmed Camann's conviction for possession of etizolam under Code § 18.2-250 since the Commonwealth sufficiently established the requisite mens rea in support of both convictions by proving Camann knowingly possessed *a* controlled substance.

"[T]he plain language of Code § 18.2-250 requires a defendant to know that the substance he possesses is in fact a controlled substance, but . . . it does not require him to know precisely what controlled substance it is." *Sierra v. Commonwealth*, 59 Va. App. 770, 775 (2012). As we have stated, the mens rea requirement in Code § 18.2-250 only applies to subsection (A). *Id.* at 778 ("[T]he General Assembly chose to specify a requisite degree of *mens rea* only in the general proscription against possessing controlled substances in the first paragraph of subsection (A)."). "Nowhere, however, in subparts (a)-(c) did the General Assembly insert a *mens rea* requirement." *Id.* at 777-78. Instead, subparts (a)-(c) focus on the defendant's actus reus and the specific type (or in this case, types) of substance(s) found in the defendant's possession. *Id.* at 778 ("The specific type of substance found in a defendant's possession is an *actus reus* element the Commonwealth must prove pursuant to subparts (a)-(c) of Code § 18.2-250(A), but it is not an element to which the *mens rea* requirement found earlier in Code § 18.2-250(A) applies.").

- 26 -

"[T]he General Assembly has chosen not to excuse a defendant who knows he is possessing a controlled substance, but is unaware or perhaps mistaken as to the precise identity of the specific substance he is possessing . . . ." *Id.* at 779. The legislature has decided that if a defendant knows that the substance he possesses is controlled, he bears the risk of incurring whatever punishment is prescribed for possessing everything in that specific substance. *Id.* ("A defendant who intentionally possesses a controlled substance, aware of its nature and character as such, bears the risk of incurring whatever punishment the General Assembly has prescribed for the possession of the specific substance he has. This is the policy the legislature has embraced, and we will not substitute our own policy for that of the legislature.").

Accordingly, I take issue with the majority requiring the Commonwealth to prove Camann knew the precise number of controlled substances in the mixture he possessed in order to be convicted of a corresponding number of counts under Code § 18.2-250.[18] "[T]he plain language of Code § 18.2-250 indicates the legislature's intent to criminalize the knowing and intentional possession of 'a controlled substance,' whatever that controlled substance may turn out to be." *Id.* at 778. Here, what Camann possessed turned out to contain two separate controlled drugs: fentanyl and etizolam. While Camann did need to know that he possessed a controlled substance to be convicted, he "[did] not need to know the *exact* nature of the substance in his possession, only that it was a controlled substance of some kind." *Id.* at 781 (emphasis added) (quoting *United States v. Martin*, 274 F.3d 1208, 1210 (8th Cir. 2001)).

---

[18] Although the majority argues it is only requiring Camann to know how many controlled substances he possessed, not which controlled substances he possessed, based on the majority's interpretation of Code § 18.2-250, this seems a distinction without a difference. From a practical standpoint, I doubt whether the Commonwealth could prove a defendant knew *how many* controlled substances he possessed without also proving the defendant knew *which* controlled substances he possessed.

Additionally, as the majority aptly states, under *Sierra,* "if a person thinks he has heroin, but it turns out to be fentanyl, that person has still 'knowingly or intentionally . . . possess[ed] a controlled substance.'" Code § 18.2-250; *Sierra*, 59 Va. App. at 783-84. But the majority seemingly argues that *Sierra* should apply with less force when a defendant thinks he possesses heroin, but actually possesses a mixture containing heroin and fentanyl. In that case, the defendant, like Sierra, would still know he possessed a controlled substance and would still be mistaken as to the precise controlled drug or drugs making up the controlled substance. Thus, consistent with *Sierra*, the defendant's mistake as to the specific controlled substances in the mixture cannot be a defense under the plain meaning of Code § 18.2-250. *Sierra*, 59 Va. App. at 783-84 ("A claim by a defendant that he knew he was possessing a controlled substance, but was unaware or mistaken as to the precise identity of that substance, is not a defense under Code § 18.2-250.").

While I appreciate the majority's concern regarding some of the potentially harsh outcomes that could result from interpreting the statute based on its plain meaning as supported by *Sierra*, such fears seem to arise from the potential policy implications, not legal interpretation. *See Daily Press, LLC v. Off. of Exec. Sec'y of Sup. Ct.*, 293 Va. 551, 557 (2017) ("Public policy questions concerning where to draw the line . . . fall within the purview of the General Assembly. In a regime of separated powers that assigns to the legislature the responsibility for charting public policy, our function is limited to adjudicating . . . question[s] of law . . . ."). Our "drug statutes require specific knowledge or intent *as to a general category of unlawful items. The specific unlawful items, however, are found in the penalty section of the scheme*." *Sierra*, 59 Va. App. at 781 (emphasis added) (quoting *United States v. Barbosa*, 271 F.3d 438, 458 (3d Cir. 2001)) (explaining how the reasoning behind 21 U.S.C. § 841 "applies with equal force to Code § 18.2-250"). Thus, we cannot "arbitrarily add specific *mens rea* requirements to elements

of an offense where the General Assembly has expressly prescribed what *mens rea* requirements it wishes to impose." *Id.* at 778. "Such public policy arguments cannot contravene clear statutory language and should be addressed to the legislature, not the courts." *Hartford Underwriters Ins. Co. v. Allstate Ins. Co.*, ___ Va. ___, ___ (Dec. 8, 2022).

Since I would have affirmed Camann's convictions for possession of both fentanyl and etizolam pursuant to Code § 18.2-250, I respectfully dissent.

Chaney, J., concurring in part and dissenting part.

I concur with the majority's holding that the evidence is insufficient to prove that Camann knowingly or intentionally possessed both fentanyl and etizolam in violation of Code § 18.2-250 because the evidence fails to prove that Camann knew that the white powder in his possession contained more than a single controlled substance. I dissent, however, from the majority's opinion affirming the trial court's denial of Camann's suppression motion because I conclude that the deputies obtained the drugs in violation of Camann's constitutional rights against unreasonable searches and seizures. *See* U.S. Const. amend. IV.

I. NO REASONABLE SUSPICION FOR THE INVESTIGATIVE SEIZURE

Deputy Spears and Deputy Russell observed Camann outside the 7-Eleven convenience store when they arrived to investigate a public-indecency complaint. Deputy Spears initially conversed with Camann during a consensual encounter while Deputy Russell investigated inside the store. Camann's police encounter was no longer consensual when Deputy Spears directed him to move his left foot so the deputy could inspect a piece of foil next to and partially under Camann's shoe. As the majority recognizes, Camann was seized when he submitted to the deputy's authority and lifted his foot. *See Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968) (recognizing that a seizure has occurred "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen"); *Cochran v. Commonwealth*, 258 Va. 604, 608 (1999) (recognizing that a seizure occurs when a person submits to an officer's show of authority).

Contrary to the majority's opinion, Deputy Spears's seizure of Camann was not a lawful investigative detention. Under *Terry* and its progeny, a police officer may lawfully detain a person to make reasonable inquiries when the officer has reasonable, articulable suspicion to believe that the person is engaged in criminal activity. *See Terry*, 392 U.S. at 21-22. "Whether an officer has a reasonable suspicion to justify . . . a detention is 'based on an assessment of the totality of the

- 30 -

circumstances.'" *Hill v. Commonwealth*, 68 Va. App. 610, 619 (2018) (alteration in original) (quoting *Branham v. Commonwealth*, 283 Va. 273, 280 (2012)). "When examining the officer's articulable reasons for stopping a person, we examine the objective reasonableness of the officer's behavior rather [than] the officer's subjective belief that the conduct indicates criminal activity." *Riley v. Commonwealth*, 13 Va. App. 494, 496-97 (1992) (citing *Terry*, 392 U.S. at 21-22).

The totality of the circumstances at the time of the seizure did not give rise to reasonable, articulable suspicion that Camann was engaged in criminal drug activity. Although the police were called to investigate a complaint about alleged indecent conduct outside the store, there was no complaint of criminal drug activity. There is no evidence that the store was in an area known for drug activity. Neither deputy saw Camann engaged in any drug activity when they observed him standing by the store. Neither deputy saw Camann with any drugs or drug paraphernalia. Neither deputy observed any indicia that Camann was under the influence of drugs when they conversed with him. After noticing a piece of foil next to and partially under Camann's left foot, Deputy Spears seized Camann based on (1) the deputy's training and experience that aluminum foil is commonly used to smoke narcotics and (2) the deputy's hunch that Camann was concealing drug evidence under his foot. But such an unparticularized suspicion and hunch are insufficient to justify the investigative seizure of Camann. *See Terry*, 392 U.S. at 27 (holding that police must have more than an unparticularized suspicion or hunch to justify an investigatory stop). Neither deputy saw Camann hold, use, or discard the foil before they noticed it under Camann's shoe. Before Deputy Spears seized Camann, neither deputy saw anything on or near the foil to indicate that the foil was drug-related.[19] Considered objectively, the totality of the circumstances at the time Camann was seized was insufficient to give rise to reasonable, articulable suspicion that criminal drug activity

---

[19] The burnt residue on the foil was never identified, and none of Camann's convictions are based on the foil or its contents.

was afoot. Under these circumstances, the deputy's observation of a suspected act of concealment by Camann did not legally justify the seizure. *See Smith v. Commonwealth*, 12 Va. App. 1100, 1104 (1991) (holding that police unlawfully seized the defendant based on suspected concealment of drugs when the defendant "quickly move[d] to put his hand into his pants when the officer's marked car came into view" in an area known for significant drug activity); *Riley*, 13 Va. App. 494 (holding that police unlawfully seized the defendant based on suspected concealment of drugs when the defendant, in a high crime area, turned and reached toward his waistband upon seeing the officer); *Goodwin v. Commonwealth*, 11 Va. App. 363, 367 (1990) (holding that police unlawfully seized the defendant based on suspected concealment of a weapon when the defendant "shoved his hand in his coat pocket, apparently upon seeing the approaching patrol car"). Camann's subsequent admission that he was concealing the foil underfoot does not add to the objective facts available to the deputy at the time of the seizure and does not convert the deputy's hunch into reasonable suspicion.

Even if, based on reliable witness reports, the deputies had reasonable suspicion to detain Camann to investigate alleged public indecency, Deputy Spears's directive that Camann move his left foot was unlawful because the directive exceeded the scope of a lawful investigative detention related to the witnesses' complaints. *See Terry*, 392 U.S. at 29 (holding that an investigative detention must be "reasonably related in scope to the justification for [its] initiation"). Since the deputy's inspection of the foil was not reasonably related to the investigation of alleged public indecency, the seizure of Camann to investigate the foil violated Camann's constitutional right against unreasonable seizures.

Since Deputy Spears seized Camann in violation of his Fourth Amendment rights, the evidence obtained pursuant to the unlawful seizure and subsequent arrest should have been suppressed and the convictions based on such evidence should be reversed. *See Davis v.*

- 32 -

*Commonwealth*, 37 Va. App. 421, 435 (2002) (reversing drug conviction where police unlawfully

detained defendant without reasonable, articulable suspicion that defendant was involved in

criminal activity and drugs were found as a result of the unlawful seizure). Because the evidence

seized from Camann should have been suppressed, there would be insufficient evidence to sustain

any drug convictions on retrial. Accordingly, I would reverse the trial court's judgment denying

Camann's suppression motion, vacate Camann's convictions, and dismiss the drug charges.[20] *See*

*Whitehead v. Commonwealth*, 278 Va. 300, 315-16 (2009) (citing *Jackson v. Commonwealth*, 267

Va. 666, 681 (2004)).

II. NO PROBABLE CAUSE TO ARREST FOR POSSESSION OF A CONTROLLED SUBSTANCE

Assuming arguendo that the pre-arrest seizure of Camann was constitutional, I disagree

with the majority's conclusion that the discovery of the full-size straw and burnt residue on the

foil gave the deputies probable cause to arrest Camann for possession of a controlled substance.

"'[P]robable cause' to justify an arrest means facts and circumstances within the officer's

knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in

believing . . . that the suspect has committed, is committing, or is about to commit" the crime for

---

[20] Camann's motion to suppress clearly moved the trial court to suppress all evidence obtained from the warrantless seizure and search of his person. Camann did not separately move to suppress the evidence found in his wallet and the rest of the evidence also found on his person. Camann's first assignment of error on appeal to this Court states:

> The trial court erred in denying the Appellant's motion to suppress
> the narcotics seized from his wallet, because the police officer's
> search of the Defendant's person and wallet violated his rights
> under the Fourth and Fourteenth Amendments of the United States
> Constitution and Article I, Sections 8 and 10 of the Virginia
> Constitution in that the Defendant's seizure and search of his
> person and wallet were not supported by probable cause.

Amended Op. Br. 1-2. Although this assignment of error was inartfully drafted, it sufficed to inform the Commonwealth and this Court that Camann's appeal challenged the trial court's ruling denying his motion to suppress. Thus, this assignment of error is not reasonably read as being limited to the suppression of the evidence found in Camann's wallet.

which he is arrested. *Dodd v. Commonwealth*, 50 Va. App. 301, 307 (2007) (second alteration in original) (quoting *Thomas v. Commonwealth*, 38 Va. App. 49, 53 (2002)). Deputy Spears immediately arrested and handcuffed Camann when the foil under Camann's foot was fully exposed, revealing a burn mark on the foil and a full-size straw. But neither Deputy Spears nor Deputy Russell testified to observing any substance on or inside the straw and neither deputy's testimony indicated the identity of the burnt residue on the foil. Under the totality of these circumstances, a reasonably cautious officer would have examined or tested the foil and straw for the presence of a controlled substance before arresting Camann. However, although Deputy Spears subsequently tested the powder found in Camann's wallet to determine whether there was probable cause to believe that the powder was a controlled substance, the deputies did not test the residue on the foil for the presence of a controlled substance.[21]

To lawfully arrest someone for the offense of possession of a controlled substance, "an officer must have probable cause to believe 'the defendant was aware of the presence and character of the drugs and that he intentionally and consciously possessed them.'" *Dodd*, 50 Va. App. at 307 (quoting *Castaneda v. Commonwealth*, 7 Va. App. 574, 583 (1989) (en banc)). Here, the deputies did not have probable cause to believe that a controlled substance was present on the foil or the straw, let alone probable cause to believe that Camann was aware of the presence and character of such substance. Thus, even if Deputy Spears's pre-arrest seizure of Camann was lawful, the warrantless arrest of Camann without probable cause was unlawful. Because the drugs were found on Camann when the deputies searched him incident to the unlawful arrest—in violation of his Fourth Amendment rights—the drugs found on Camann should have been suppressed. *See, e.g.*, *Jefferson v. Commonwealth*, 27 Va. App. 1, 19-20

---

[21] The Virginia Department of Forensic Science has approved field tests for law-enforcement officers to use to determine whether there is probable cause to believe that a substance is a controlled substance. *See* Code § 19.2-188.1(A).

(1998) (holding that the trial court should have suppressed evidence found in a warrantless search of the defendant incident to the unlawful arrest of the defendant).

Contrary to the majority's opinion, the cases cited by the majority do not support the conclusion that the deputy's discovery of burnt residue on the foil gave the deputy probable cause to arrest Camann for possession of a controlled substance. In *Carson v. Commonwealth*, 12 Va. App. 497 (1991), an officer seized as contraband a one-and-a-half to two-inch straw that was in plain view on the driver's seat of a car, between the driver's legs. *Id.* at 499. The officer testified in *Carson* that from his experience in drug enforcement work, he "recognized the straw as the type 'that people use to ingest cocaine through their nose.'" *Id.* This Court found that "[t]he uniqueness of the straw's size distinguishes it from straws one would usually encounter for legitimate purposes." *Id.* at 502. Therefore, the straw in *Carson* is distinguishable from the full-size straw at issue here. This Court held in *Carson* that "[t]*he distinctive character of the straw* coupled with the officer's experience 'would warrant a man of reasonable caution' to believe that the straw might be useful as evidence of a crime." *Id.* (emphasis added). Thus, we held that the officer's seizure of the straw was lawful. This Court further held in *Carson* that the officer's discovery of white powder residue on the straw gave the officer *probable cause to search the car* from which the straw was lawfully seized—*not* probable cause to arrest the driver for possession of a controlled substance.

Here, in contrast with *Carson*, the evidence does not show that the foil and full-size straw found outside the 7-Eleven store have characteristics that distinguish them from foil and straws used for legitimate purposes. Foil can be used to cook or wrap food or to extinguish a cigarette, among myriad other legitimate purposes. Neither Deputy Spears nor Deputy Russell identified the burnt residue on the foil as a controlled substance. Despite Deputy Spears's knowledge that

foil and straws are commonly used to smoke narcotics, the totality of the circumstances here did not give the deputies probable cause to believe that Camann possessed a controlled substance.

In *Commonwealth v. Ramey*, 19 Va. App. 300 (1994), this Court held that an officer had probable cause to seize "a homemade 'bong' used for smoking illegal drugs" that was seen in plain view protruding from a pack worn by the defendant. *Id.* at 301. This holding is based on "the distinctive character of the plastic bottle with foil on top and the highly unlikely event that it would have a legitimate use." *Id.* at 304. *Ramey* did not address whether the officer had probable cause to arrest the defendant for possession of a controlled substance.

The majority cites three cases from our sister states in purported support of the majority's conclusion that the discovery of burnt residue on the foil gave the deputies probable cause to arrest Camann for possession of a controlled substance. But the cited authorities do not support the majority's opinion. In *State v. Rose*, 282 P.3d 1087, 1093 (Wash. 2012) (en banc), the court held that the officer had probable cause to arrest the defendant for possession of a controlled substance where the officer saw chalky white residue in a glass tube protruding from the defendant's bag. *Id.* at 1088, 1092-93. The officer in *Rose* testified that based on his training, the residue was consistent with smoking of some substance. *Id.* at 1093. The officer also testified that in his training and experience, he suspected the glass pipe with white residue inside "were consistent with drug possession" and he suspected the residue was either methamphetamines or cocaine. *Id.* In contrast with the officer's testimony in *Rose*, the deputies who testified here did not identify the observed residue as a controlled substance. But in *Rose*, the officer's identification of the residue as a controlled substance was essential to the court's holding that the officer had probable cause to arrest the defendant for possession of a controlled substance. *See id.* at 1092-93. Therefore, *Rose* does not support the majority's opinion.

In *People v. Edwards*, 925 N.E.2d 576, 577 (N.Y. 2010), the court held that the police had probable cause to arrest the defendant based on the officer's observation of cocaine residue on the defendant's hand. As in *Rose*, the arresting officer in *Edwards* identified the observed residue as a controlled substance, distinguishing *Edwards* from Camann's case. Therefore, *Edwards* does not support the majority's opinion.

In *Bright v. State*, 455 S.E.2d 37, 52 (Ga. 1995), the defendant was arrested for possession of a controlled substance after the police stopped his car pursuant to a lookout and "discovered on the window ledge outside the door of the car an object which the officer recognized to be a crack pipe containing residue of crack cocaine." In addition to identifying the pipe as a distinctive crack pipe, the officer testified to his familiarity with crack cocaine residue. *See id.* As in *Rose* and *Edwards*, the court's holding that the police had probable cause to arrest the defendant for possession of a controlled substance was based on the officer's identification of the observed residue as a controlled substance. Therefore, like *Rose* and *Edwards*, *Bright* does not support the majority's opinion.

It appears that there is no authoritative caselaw supporting the majority's opinion that the discovery of unidentified burnt residue on a piece of foil is sufficient to provide probable cause to arrest a possessor of the foil with possession of a controlled substance. As explained above, the totality of the circumstances here—including the discovery of burnt residue on the foil under Camann's foot—did not provide probable cause to arrest Camann for possession of a controlled substance. Absent probable cause to arrest Camann, the deputies searched Camann and found the drugs pursuant to an unlawful arrest, in violation of Camann's Fourth Amendment rights. Therefore, the drugs should have been suppressed and Camann's drug convictions should be reversed. *See Jefferson*, 27 Va. App. at 19-20.